STATE *versus* THE INHABITATS OF FREEPORT.

The legislature may authorize the construction of a bridge across navigable or tide-waters, though the navigation may thereby be injured; but any excess or irregularity in the exercise of such authority, by which navigation becomes obstructed, becomes *pro tanto* a nuisance.

A bridge across a navigable river may not necessarily be an obstruction to navigation, and if it can reasonably be so constructed as not to interfere with navigation it should be so done. The power conferred must be so exercised that no more injury may be done to the rights of others than is necessary to accomplish the purpose for which it is granted.

An act of the legislature should not be construed as authorizing any *unnecessary* infringement of existing privileges and rights.

This case is upon an indictment for a nuisance, and a verdict of guilty, was by consent rendered *pro forma;* and the whole evidence is reported by GOODENOW, J., and the full court are to render such judgment as the rights of the par-

ties may require, having power to draw such inferences as a jury should.

The evidence material to the points decided is fully stated in the opinion.

*Howard & Strout*, counsel for defendants.

The main point in defence is, that the legislature authorized the county commissioners to lay out a road across Cousins' river and its branches; and also authorized them to fix the kind and width of any draw in the bridge over Cousins' river, necessary to accommodate navigation. Special laws of 1832, chap. 251. By that act, the legislature evidently contemplated a draw in the bridge over Cousins' river, and not in the bridge over the east branch. But the act does not require the commissioners to appoint a draw to be made at all. The act submits that matter to their determination. They are to judge what is necessary. The commissioners have determined that matter.

The bridges are of the required width. There is a draw in the bridge over Cousins' river. The commissioners do not direct any to be made in the bridge over the east branch. That adjudication is conclusive, because the commissioners had the authority to determine, and have determined that question.

It may be said the legislature could not grant such authority.

We answer that the state has the right to authorize the building of a bridge across navigable tide waters. Spring v. Russell, 7 Maine R., 274; Cottrill v. Myrick, 12 Maine R., 222; Moore v. Veazie, 31 Maine R., 360; Moore v. Veazie, 32 Maine R., 343.

" The legislature may authorize the construction of a bridge across navigable or tide waters, although the navigation may thereby be impaired or injured." Rogers v. Ken. and Port. R. R. Co., 35 Maine R., 323; Parker v. Cutler Mill Dam Co., 20 Maine R., 353; State v. Anthoine (Maine), not yet reported.

Navigable streams belong to the public, and are subject to

the control of the sovereign power. Davidson v. Boston and Maine R. R.. 3 Cush., 106, directly in point. See remarks of C. J. Taney, in Pennsylvania v. Wheeling bridge, 13 Howard, 581. Carter v. Murcot, 4 Burrow, 2164 Comyn's Digest, Navigation, A. & B. Hale, De Jure Maris, chap. 4, cited in Cowens' Reports, vol. 6, p. 543, n.; Hooker v. Cummings, 20 Johns., 101; Carr v. Charlestown, 1 Pick., 185.

It follows that while navigable rivers belong to the public, they must be subject to the control of the legislature as the sovereign power, for public purposes. In this case the alleged obstruction is one designed by the legislature for the greater accommodation of the public, and is in fact only an appropriation by the public of a public right to a certain extent, to another public use. The fact that the last public use has impaired the former use, was a matter proper for the consideration of the legislature, but cannot *now* affect their determination.

*Appleton, Attorney General*, for the State.

DAVIS J. By a special act of the legislature, approved March 3, 1832, the county commissioners of the county of Cumberland were authorized to lay out a county road from Freeport to North Yarmouth, over Cousins' river or its branches, and the tide waters of the same; and to fix the kind and width of any draw in the bridge over said river, necessary to accommodate the navigation thereof." In December of the same year the commissioners located the road over both branches of the river, a short distance above their confluence; and they ordered that "the bridge over Cousins' river be built with a suitable and convenient draw, which shall admit of the passage of vessels up and down said river of the width of twenty-two feet."

Both branches were sometimes called "Cousins' river;" and as the eastern branch is larger than the other, it is argued that the commissioners referred to this as the one over which the draw-bridge should be built. But their language admits of no such construction. Their location fixes the

*width* of the bridge over " the east branch of Cousins' river," but it requires no draw ; and to prevent the possibility of mistake they designate it as the branch " which is the line between the towns of Freeport and North Yarmouth." And their location and adjudication are conclusive that in the bridge over this branch a draw is not " necessary to accommodate the navigation thereof."

By virtue of the authority thus conferred, the inhabitants of Freeport constructed a bridge over this branch of Cousins' river. This bridge was built on piles ; and the evidence shows that it did not obstruct the navigation of the river with gondolas and boats. The farmers residing above the bridge were still accustomed to use the river as a highway for carrying down their wood, hay, &c., and bringing back their supplies, and sea-dressing. This bridge remained for about fourteen years.

In 1846 a new bridge was built—not upon piles, as before—but of stone, covering the channel by a single arch. This arch rests upon a foundation extending entirely across the bed of the river, blocking up the current, and rendering the navigation of the river impossible for any useful purpose. This bridge the grand jury have presented as a nuisance ; and upon the evidence reported a verdict of "guilty" has been returned, by consent, subject to the opinion of the court.

Navigable rivers are common highways, in which the public have the same interest that they have in other highways. The unauthorized erection of a bridge over a public navigable river, which obstructs the navigation, is an offence at common law,—on the same principle upon which the erecting of gates across a public road has been held to be a nuisance. James v. Hayward, Cro. Car., 184 ; Rex. v. Cross, 3 Camp., 224.

But navigable rivers, though they belong to the public, are subject to the control of the sovereign power. Davidson v. Boston and Maine R. R., 3 Cush., 106. And the doctrine is too well settled to need any further discussion, that the legis-

14

lature may authorize the construction of a bridge across navigable or tide waters, though the navigation may thereby be injured. Rogers v. Kennebec and Portland R. R., 35 Maine R., 325; Commonwealth v. New Bedford Bridge, 2 Gray, 339.

The act of the Legislature of 1832, chap. 251, authorized the construction of a bridge across the east branch of Cousins' river. Did it authorize the construction of *such a bridge* as was made in 1846? For, though the inhabitants of Freeport were empowered to make a bridge, according to the location of the county commissioners, "any excess or irregularity in the exercise of such a power, by which navigation becomes obstructed, becomes, *pro tanto*, a nuisance." Renwick v. Morris, 3 Hill, 621; 7 Hill, 575.

A bridge across a navigable river may not, necessarily, be an obstruction to navigation. "I can very well conceive," says C. J. Campbell, "that a bridge may be so built in a navigable river, as to be no obstruction." And if so built, it is not a nuisance. Regina v. Betts, 22 Eng. Law and Eq. R., 240. It follows, that if it can reasonably be so constructed as not to interfere with navigation, it should be so constructed. The power conferred must be so exercised as not to injure the rights of others more than is necessary in order to accomplish the purpose for which it is granted. And an act of the Legislature should not be construed as authorizing any *unnecessary* infringement of existing privileges and rights.

The general principles applicable to this class of cases are well stated by Shaw, C. J., in the case of Newburyport Turnpike v. Eastern R. R., 23 Pick., 326. "We are to presume that in granting, limiting and modifying the powers and rights of highways, &c., the legislature had in view that common public good which is the object of them all. In all cases, therefore, where some interference is unavoidable, and legislative provisions have been made with reference to such interference, such construction ought to be put upon them, if possible, *that the powers and privileges of each shall be no*

*further limited or restrained than may be reasonably neces-sary to enable the other to accomplish the public purpose for which it was established.* Such must be presumed to have been the intention of the legislature."

Was it reasonably necessary, in making a bridge across the east branch of Cousins' river, so to construct it as to ob-struct the navigation of that river with gondolas and boats ? Both parties, in presenting the evidence, seem to have over-looked this question. But the case shows that the bridge which was first made, being on piles, did not interfere with the accustomed use of the river ; and there is no evidence that this bridge, which was used for about fourteen years, was not safe and convenient for the public travel ; or that it did not answer all the purposes for which the legislature au-thorized a bridge to be made. The river was a public high-way, and the jury might well have concluded that there was no necessity so to construct the bridge over it as to impair or destroy the use of it for the purposes of navigation. Judgment must, therefore, be rendered according to the verdict.