ALBERT H. GERRISH & als. versus JOHN B. BROWN & als.

The Androscoggin River, at Berlin, though not technically a navigable stream, is of sufficient capacity to float logs, rafts, &c., and being so, is, by the law of this State, a public highway.

Highways, whether on land or water, are designed for the accommodation of the public for travel or transportation, and any unauthorized or unreasonable obstruction thereof is, in legal contemplation, a public nuisance.

If a person obstructs a stream, which is, by law, a public highway, by casting therein waste material, or by depositing material of any description, except as connected with the reasonable use of such stream, as a highway, or by direct authority of law, he does it at his peril; it is a public nuisance for which he would be liable to an indictment, and to an action at law by any one specially damaged thereby.

If the owners of a mill cast the slabs, edgings and other waste of the mill into the river, to be floated away by the stream, and thereby the navigation of the river is obstructed, or the rights of private individuals are infringed upon, they will be liable to an action for the damage caused by their unauthorized acts.

ON REPORT.

This was an action on the CASE to recover of the defendants damages for throwing large quantities of slabs, edgings and other waste stuff from their sawmill at Berlin, into the Androscoggin River, and abandoning it to float down the river and mix with the plaintiffs' timber and fill up their pond or reservoir for logs, and greatly retarding the operations of their mill.

The plaintiffs offered testimony tending to prove the following facts: — that the Androscoggin River is a public highway, and has been used for many years for the purpose of floating rafts of timber and logs over and down the same; that, in 1854, they became the owners of Town's island, situated in Bethel, and formed by the Androscoggin; and of the main land opposite said island, and on the southerly part or branch of the river; that, in said year, they built a steam sawmill, at a large expense, on said main land and opposite said island, near the branch south of said island, and have been in the use and occupancy of the same ever

since; that they extended a slip from said mill to said branch for the purpose of drawing logs therefrom to said mill; that above Town's island, and separated from it by a narrow channel, is Clark's island — Town's island consists of about forty acres — Clark's island being much smaller; that the channel, northerly of Town's island, is about seventeen and that southerly of it is about six rods in width, and that about four-fifths of the waters of the river pass down the former and the other fifth down the latter channel; that, for the accommodation of their said mill, and to constitute said southerly branch opposite Town's island a reservoir, or mill pond, to detain and hold logs for the use and to be manufactured at said mill, the plaintiffs, in 1854, made the following erections; that they so constructed a boom from their said slip across the southerly branch that they could unfasten it at one end at pleasure and let it swing down stream with the current against the bank; that, about six rods above said boom, in the centre of the branch, they built a pier; that, about eight or ten rods further up stream, where said branch is about eleven rods in width, they constructed two other piers, opposite each other, and near to either shore, called jamb piers; that opposite, and extending above and southerly of said two piers, and flanked by a high bank, is about four acres of low land, of the plaintiffs', and on which, in high water, the plaintiffs could float logs for the use of their mills; that they extended a boom across the channel, between said islands, which could be loosened at the upper end at pleasure, and thus leave the channel unobstructed; that, about twenty-five hundred feet above Clark's island, they built a pier in the center of the river, and from it extended a guide boom to the head of Clark's island; also, another boom up stream from said pier about twenty-five hundred feet, to the northerly shore of the river, and fastened the same to a tree on the main land; that these acts were done with the consent of the owners of Clark's island and of the land owners upon each side of the river; that, when logs were running in the river, other than their

own, they would unfasten the upper portion of their boom from said pier and the lower portion from the head of Clark's island, and, from bends in the river and the force of the current, the upper portion would be carried against the bank, and the lower end of the other portion into the center of the stream; that they would unfasten the upper end of the boom between the islands, and one end of the boom at the slip, and the two latter would swing down stream, and thus leave the river entirely unobstructed; that, when logs of other owners were not running, they would swing and fasten all of said booms, and, by means thereof, and of said piers, be enabled to turn their logs into, and hold them, in said southerly branch, above their mills and below the head of Town's island; that, when said branch was thus filled, the logs and floating matter, which came down the channel and southerly of Clark's island, would pass off and down stream, in the channel between said islands; that, whenever the water was of sufficient height to float their logs into said southerly branch, or pond, large quantities of slabs and edgings, and other refuse stuff made at sawmills, for the past five or six years, would come down said river and be floated and carried into said branch, or pond, and that the same could not be separated from the plaintiffs' logs before entering said branch, or pond; that said slabs and edgings come down in such quantities as to occupy one-third of the space in said pond, and so intermix with and confine their logs, that they were unable to move them or adjust them for the purpose of being drawn up said slip; that said slabs and edgings prevented their swinging a boom on the bank of said branch opposite said low land, to hold logs for the use of said mill, while the logs of other owners were being passed by; that, while sawing at their said mill, it requires one man, at least, all the time, to separate said slabs and edgings from the logs and pass the same down stream, and that it frequently became necessary to stop the operation of said mill, employing about twenty-five men, to clear out and get rid of said refuse matter.

They also offered testimony tending to prove that it is, and has been the custom of mill and log owners on said river, to construct and use piers and booms necessary and proper to stop and hold logs for the use of their mills; and also to build such side dams to operate their mills as do not interfere with the navigation of the river. Upon cross-examination, there was also testimony tending to prove that mill owners on the river for years past had been accustomed to throw the slabs and other refuse stuff from their mills into the river, to rid themselves of it.

The plaintiffs also offered testimony tending to prove that defendants constructed mills at Berlin Falls, in the State of New Hampshire, in 1853, that they have manufactured from three to eight millions feet of lumber in the same annually; that two thousand feet of lumber produces about one cord of slabs and edgings, and that the defendants have thrown the same into said river at said falls; that the defendants' mills comprise two gangs, two single saws and other machinery; and that the slabs and edgings, thus thrown in by the defendants, are a part of the same floated down the river, and into their pond; that the natural current of the river would convey about one-fifth of the floating matter down and through said southerly branch, and the balance down said northerly branch, and that the northerly branch is of sufficient floating capacity for the use of the public; that no mills of anything like or near the manufacturing capacity of the plaintiffs' were erected on the Androscoggin prior to the defendants'.

The plaintiffs admit that there are two other large mills at said falls, and that the owners of the same have thrown their slabs and edgings into said river to some extent.

There was no proof offered of any obstruction or diversion of the water by means of any drift stuff lodging or sinking on the bed of the river or pond, and plaintiffs' proof tended to show that, in the natural state of the river, about four-fifths of the logs and drift stuff, or other floating material, would go down the northerly branch of the river, and

about one-fifth on the southerly branch; that, if it were not for the plaintiffs' sheer boom, not more than one-fifth of the defendants' stuff would go into the plaintiffs' pond, and but for the pier and booms of the plaintiffs, below their mills, that one-fifth could all pass on and not be detained.

The drift stuff, complained of in this action, is all floating drift stuff which would pass on and not be detained but for the piers and booms, and sheer booms of the plaintiffs.

Upon this testimony, the cause was, under the direction of the Court, taken from the jury, and, by consent of parties, submitted to the Court to determine whether, upon the testimony offered by the plaintiffs, this action can be maintained.

The case was argued by

*D. Hammons*, for the plaintiffs, and by

*Shepley & Dana*, for the defendants.

The opinion of the Court was drawn up by

RICE, J.— This case comes before us on a *quasi* report. It is not presented in conformity with the statute, and might, therefore, with propriety, be dismissed. It, however, involves questions of much importance, not only to the parties immediately interested, but to many other citizens of the State. For the purpose, therefore, of enabling those interested to adjust matters in controversy intelligently between themselves, or to present the points in issue before a Court and jury, we proceed briefly to consider the case as though the facts, which the evidence tended to prove, had actually been established by proof.

It would thus appear, that the Androscoggin river at the points whereon the mills of the respective parties are located, and between them, though not technically a navigable stream, is of sufficient capacity to float logs, rafts, &c., or, in other words, is a *floatable* stream, and, as such, by the law of this State, is deemed a public highway.

The plaintiffs are owners of a steam sawmill situated at Bethel, on the bank of said river, which is supplied with

logs floated down the same, and secured by means of piers and booms in that portion of the river which flows between Town's island and the south shore thereof, and also in a place of deposit, consisting of about four acres of land, owned by them, and upon which logs may be floated at high water. To facilitate the process of catching and securing logs, the plaintiffs have also constructed sheer, or guide booms, to be used temporarily, running from the head of Town's island to Clark's island, and from thence to the north shore of the river.

The defendants are the proprietors of an extensive milling establishment at Berlin Falls, some twenty miles above, on the same river, where they manufacture large quantities of lumber, the waste from which they cast into the stream, below their mills, to be floated away as it may, by the current.

The complaint of the plaintiffs is, that large quantities of this waste material, from the defendants' mill, comes down upon the stream, intermingled with their logs, runs into their boom, and greatly obstructs the moving of logs therein, and also prevents them from swinging a side boom on the bank of said river, opposite the place of deposit on their own land, to hold logs for the use of their mill, while the logs of other owners are being passed by.

The question is, whether the plaintiffs, without fault on their part, suffer injury from the unauthorized acts of the defendants. To determine this involves both law and facts. We can now only indicate the rule of law applicable to the case. The facts must be settled hereafter.

The plaintiffs' mill, not being a water mill, does not fall within the protection of the Mill Act. No question involving the right of flowage is presented. The question presented involves, simply, the legitimate use of the river, by the parties, as a public highway.

This subject, as it bears upon the specific questions at issue between these parties, has very recently received a somewhat extended and careful examination by this Court, in *Dwinel* v. *Veazie*, 50 Maine, 479.

It was therein decided, with special reference to casting into the water, to be floated away, edgings and other waste materials from sawmills, that highways, whether on land or water, are designed for the accommodation of the public, for travel or transportation, and any unauthorized or unreasonable obstruction thereof is a public nuisance in judgment of the law. They cannot be made the receptacles of waste materials, filth, nor trash, nor the depositories of valuable property even, so as to obstruct their use as public highways. All such obstructions, in the eye of the law, are deemed unreasonable.

If, therefore, a person obstructs a stream which is by law a public highway, by casting therein waste material, filth or trash, or by depositing material of any description, except as connected with the reasonable use of such stream as a highway, or by direct authority of law, he does it at his peril; it is a public nuisance for which he would be liable to an indictment, and to an action at law by any individual who should be specially damaged thereby.

A person who should cast, at random, filth or trash into a dock, or waste materials into a public river, to float or sink, as it may, without guidance or direction, can in no just sense be said to be in the use of such dock or river for purposes of navigation. The term *navigation*, as applied to waters which are used as highways, imports something different; it denotes the transportation of ships or materials, from place to place, under intelligent direction or guidance, and not the use of such waters as a mere receptacle of filth, or as a place for the deposit of worthless materials.

If, therefore, the defendants elect to cast the slabs, edgings, or other waste of their mills, into the river, to be floated away by the stream, they do so at their peril, and must see to it that they do not thereby obstruct the navigation of the river, nor infringe upon the rights of private individuals.

So, too, with regard to the plaintiffs. Like other citizens they may use the river as a highway *for purposes of navigation*, and, as incident to this right of navigation, the tem-

porary obstruction of portions of the river, while preparing their materials for transportation, or in securing them at the termination of their transit, would constitute no violation of law. In this respect, public streams are governed by the same general rules of law as are highways upon land.

A temporary occupation of a street, or highway, by persons engaged in building, or in receiving or delivering goods from stores or warehouses, or the like, is allowed, from the necessity of the case ; but a systematic and continued encroachment upon the street, though for the purpose of carrying on a lawful business, is unjustifiable. *People* v. *Cunningham*, 1 Denio, 524.

For such purpose, and as incident to the reasonable use of the river for running and securing logs, parties may use temporary sheer, or guide booms, to direct the logs or lumber into proper places, in which to detain them for use. *Dwinel* v. *Veazie*, before cited.

But they are not authorized, by the construction of piers and booms, to convert navigable streams into permanent places of deposit for logs or other materials, so as thereby to obstruct the navigation of such streams or rivers. If the plaintiffs have done so in this case, and have thereby contributed to the production of the injury of which they complain, so far they are remediless, as the Court will not interfere, when both parties are acting in violation of law, to determine which is the more culpable.

Whether the plaintiffs have been injured, by the unauthorized acts of the defendants, in the enjoyment of structures which they have a right to place upon the river, or in their use of the river as a highway, we are unable to determine from the case reported. We therefore remand the case to the county court to be tried in conformity with the legal principles above stated, in case the parties shall be unable to adjust their differences without the further interposition of a court and jury.          *Case to stand for trial.*

APPLETON, C. J., DAVIS, KENT, WALTON and DICKERSON, JJ., concurred.