## PECK v. THE CITY OF MICHIGAN CITY.

[No. 18,186.    Filed March 9, 1898.]

MUNICIPAL CORPORATIONS.—*Sewers.*—*Damages for Negligent Con-
struction.*—If deposits from a sewer constructed and maintained
by a city cause a peculiar injury to the owner of docks, by prevent-
ing or materially interfering with the accustomed and lawful use
of such docks, the city is liable in damages. *pp. 671-682.*

NUISANCE.—*Limitation of Action.*—Where a nuisance is of a charac-
ter so permanent that it may fairly be said that the entire damage
accrues in the first instance, the statute of limitation begins to run
at this time. On the other hand, where the nuisance is a continu-
ing source of injury, there is a continuing right of action. *pp. 682-
684.*

From the LaPorte Circuit Court.    *Reversed.*

*J. F. Gallaher, C. R. Collins* and *J. B. Collins,* for
appellant.

*W. H. Breece,* for appellee.

HACKNEY, J.—This suit was by the appellant, in
three paragraphs of complaint. To the first para-
graph appellee's demurrer was sustained, and to the
second and third paragraphs demurrers were over-
ruled and answers filed, and to said answers demur-
rers were overruled. Said several rulings are here
assigned as error.

Each of the paragraphs of complaint alleged that
appellant owned real estate fronting upon the basin
of the harbor at the city of Michigan City and main-
tained docks for the loading and unloading of mer-
chandise to and from the water craft doing business
at said city, said business constituting the principal
source of value to said property; that in the year 1883

the city had constructed an extensive system of sewers for the drainage and sewerage of said city, the main sewer emptying into said basin near to the appellant's property; that said system of sewers carried and emptied into said basin continually large quantities of sewage and of sand from the surface drainage of said city, so filling said basin at the point where his docks were maintained; that the water became too shallow to admit water craft to approach his docks; that the sewage collected at the mouth of said sewer, becoming so foul and offensive as not only to make it disagreeable and offensive for persons to approach his docks with water craft, but to make it offensive to persons to conduct business upon his docks and upon his premises; and that by reason thereof his premises were rendered valueless, to his damage in the sum of $5,000.00.

In each of the second and third paragraphs of complaint it was alleged generally that the appellee had been negligent in the plans and construction of said sewer, in emptying it at said point, the stream in said harbor being sluggish and insufficient to carry away the deposits from said sewer; also, in not removing from the mouth thereof the sand and sewage so emptied, and in collecting said sewage at said point without furnishing any outlet therefor.

The third paragraph alleged that the damage to his property had accrued since the year 1890. All of the paragraphs sought damages and the first sought also to enjoin the further discharge of sand and sewage into said basin. The answers were that the causes of action did not accrue within six years.

It is a general proposition, which we think applicable to the first paragraph of complaint, that, in the construction of sewers and other public works authorized by law, cities are liable for consequential injuries resulting from negligence only. *City of Richmond*

v. *Test,* 18 Ind. App. 482; *City of Terre Haute* v. *Hudnut,* 112 Ind. 542; *Rice* v. *City of Evansville,* 108 Ind. 7; *City of Evansville* v. *Decker,* 84 Ind. 325; *Cummins* v. *City of Seymour,* 79 Ind. 491; *Weis* v. *City of Madison,* 75 Ind. 241; *Macy* v. *City of Indianapolis,* 17 Ind. 267.

Said first paragraph does not proceed upon the theory of negligence, and does not seek to require the removal of the obstruction to the uses of the docks, but seeks to enjoin the use of the basin as a place to discharge sewage. The gist of any cause of action, under the facts pleaded, there being no negligence in plan or construction, must be in not caring for the sewage, when discharged into the basin, so as not to create and continue a nuisance, as we shall show hereafter.

The sufficiency of the second and third paragraphs of complaint is not presented. Each of said paragraphs proceeds upon the theory that the appellee, by her negligence, created a nuisance affecting the value of the appellant's property. Were the answers of the statute of limitations available? The argument proceeds upon the question as to whether the cause of action accrued from the time of the act resulting in the alleged nuisance, the construction of the sewer, or from the time of the injury sustained.

Conceding, as we must, from the absence of any question, the sufficiency of the second and third paragraphs of complaint, the cause of action relied upon in each is that by negligence the city has created and maintains a nuisance which directly affects public navigation and the appellant's enjoyment of his private property. If the complaint makes out this cause of action, it may be maintained upon authority. *Franklin Wharf Co.* v. *City of Portland,* 67 Me. 46, 24 Am. Rep. 1; *Brayton* v. *City of Fall River,* 113

Mass. 218, 18 Am. Rep. 470; *Richardson* v. *City of Boston,* 19 How. (U. S.) 263, 270; *Haskell* v. *City of New Bedford,* 108 Mass. 208; *Barron* v. *Mayor, etc.,* 2 Am. Jurist, p. 203; 2 Dillon's Munic. Corp. (4th ed.), p. 1330, note; 2 Dillon's Munic. Corp. (4th ed.), sections 1047, 1048, 1051 and 1051a; Beach on Public Corporations, section 760; Harrison's Munic. Manual, p. 400; Tiedman on Munic. Corp., section 355; *State* v. *City of Portland,* 74 Me. 268. We must, therefore, look to the character of the liability and of the remedy, to ascertain whether they are of the class against which the statutes of limitation are directed.

In the first of the above-cited cases, a case in all respects like the present, the liability is clearly shown. The rights and duties of the city, the general public, and the private property owners are there given as follows: "The right to build the sewer and outlet implies the right to use them for the purposes for which they were intended, to wit, for the collection and discharge of the debris of that part of the city, where they should be constructed, into the dock below low water mark. But it is to be borne in mind that the right to do this being in contravention of the right of the public, at common law, to use the sea as a public highway, should be construed strictly and made to harmonize, as nearly as may be, with this paramount right of the public; for we do not, by any means, assent to the proposition of the counsel for the defendants that the right of navigation is subordinate to the right of sewerage. No authority has been cited to sustain that position, nor is it reconciliable with the well established doctrine of the common law. The public right to the navigation of the sea is not qualified or limited, at common law, by any private or municipal right of sewerage. 'It is an unquestionable

principle of common law,' say the court, in *Arundel* v. *McCulloch*, 10 Mass. 70, 'that all navigable waters belong to the sovereign or, in other words, to the public, and that no individual or corporation can appropriate them to their own use, or confine or obstruct them so as to impair the passage over them, without authority from the legislative power.' So in *Commonwealth* v. *Charlestown*, 1 Pick. 180, Parker, C. J., says: 'There can be no doubt that, by the principles of the common law, as well as by the immemorial usage of this government, all navigable waters are public property for the use of all the citizens; and that there must be some act of the sovereign power, direct or derivative, to authorize any interruption of them.' The same doctrine has been repeatedly held and applied in this state to tide water and navigable streams. In *Gerrish* v. *Brown*, 51 Me. 256, it was held that navigable rivers are public highways, and that if any person obstruct such a river by carting therein waste material, filth, or trash, or by depositing material of any description except as connected with the reasonable use of such river as a highway, or by direct authority of law, he does it at his peril, and is guilty of creating a public nuisance. The statute under which the defendants built the sewer and outlet is not to be construed, therefore, as authorizing an unnecessary infringement of existing rights and privileges; but it is to have such a construction that the wharf company shall be no further limited or restricted in these respects than may be reasonably necessary to accomplish the purpose of the statutes; and it is the duty of the defendants to exercise the power thus conferred in accordance with this rule. *State* v. *Freeport*, 43 Me. 198, 202; *Newburyport Turnpike* v. *Eastern Railroad*, 23 Pick. 326. The city has the right to use the sewer, and the wharf company the right of naviga-

tion and the use of their wharf. These respective rights are to be reasonably enjoyed. Neither party can destroy, or unreasonably and unnecessarily impair the rights and privileges of the other. The purpose of the defendant's erection under the statute is substantially accomplished by the discharge of the deposits at the outlet of the sewer. It cannot be presumed or implied that the statute contemplated the erection of a public nuisance below low water mark, by allowing the deposits from the outlet of the sewer to accumulate and remain there in such quantities as to menace the public health, obstruct navigation and seriously to impair, if not entirely to destroy, the plaintiff's erections, previously made under an act of the legislature of equal authority with that under which the defendants made their erection. Nor is it reasonable to conclude that the grant under which the plaintiffs extended their wharf into tide waters, implies the right thereby to create a public or private nuisance either in the manner of using their wharf or by its disuse and allowing it to go to decay. The purpose of the legislative grant to the wharf company was not to destroy or obstruct navigation and commerce but to facilitate them. So the purpose of the statute under which the city acted was not to authorize it to transfer a nuisance from the city to low water mark, or to create one there, but to enable it to conduct the rubbish and impurities from a particular portion of the city to a point in the sea where they would ordinarily be so distributed and dissipated as not to create a nuisance. If, however, this result is not produced either by reason of the action of the elements or from some other cause than the fault of the plaintiffs, it is the duty of the city to remove those deposits within a reasonable time and in such a manner as to prevent their becoming a nuisance to the public or a private

nuisance to the wharf company. The right of the defendants to construct an outfall for the sewer in the sea does not include the right to create a nuisance, public or private; it is a right to make deposits temporarily, and not a right to obstruct navigation permanently."

In *Brayton* v. *City of Fall River, supra,* the question was as to the rights of the city to conduct sewage into docks so as to lessen the depth of the water and prevent the landing of cargoes at the wharf, and as to the liability for so doing. It was said: "The defendants had the right to make these sewers or drains, and to discharge them into the sea. But this right is subject to some limitations. It does not include the right to create a nuisance, public or private. If the sewers or drains are so built or managed as to create a public nuisance, the defendants are indict-able; if a private nuisance is created, they are answerable in damages to the person injured."

In the old case of *Barron* v. *Mayor, etc,. supra,* the question was as to the right of the city of Baltimore, for the purpose of drainage, to conduct certain streams into the docks of the appellants, thereby causing large quantities of sand, earth, etc., to be deposited near the appellant's wharf, lessening the depth of the water and impairing the access to the wharf. In the full and able discussion of the rights of the parties by Archer, C. J., it was said: "If it was a measure necessary to be done for the public benefit of the inhabitants of Baltimore, and the natural and necessary consequence of the measure has been the permanent injury and sacrifice of the plaintiff's property, justice seems to demand that he whose property has fallen a victim to the public service should be compensated in some way. And if he do not succeed, it must be admitted that the most striking and apparent justice

must yield before some unbending technical principle, or some fancied theory of public policy.    It must moreover be admitted that justice would seem to demand that the compensation should proceed from the quarter to which the benefit flows.    I cannot permit myself to doubt but that the character of the plaintiff's rights were such that he might well complain of an injury to them.    He had the right which every man has to the benefits flowing from a navigable stream contiguous to his land.    He had a right to pass and repass with his vessels. No man had a right to moor a vessel to his lands without his consent; and if he were in the habit of demanding and receiving a compensation from owners of vessels for such consent, and has been deprived of this benefit and profit by the filling up of the navigable stream opposite to his lands, he has been deprived of an important privilege, and been compelled to surrender it for the public benefit.    He has been disseized, or, more properly speaking, deprived of an easement appurtenant to his land, which constituted a great portion of its value.    And it would be in vain to guard with such vigilance the freehold itself, if the liberties and privileges appurtenant to it were not also the subject of constitutional guardianship.    Over the soil covered by the water, over the water itself, which belong to the state, I need not say he had no right; but he had a perfect right, as he had to the soil of the wharf itself, to the profits growing out of the depth of the navigable water attached to it, which was incident to the grant of the soil itself.    *    *    *    The city corporation, the inhabitants of the city, will always be willing to pay for that which their general advantage, and benefit, and prosperity may require to be done; and they ought to pay for it.    There is no principle which would bind the individual sufferer to bear the whole burthen of any

public improvement.   The law cannot be so unjust
as to produce such a consequence.   I will not say
that there may not be some cases which the public
interest and the policy of the country might demand
should not be heard in the courts of justice, and in
which the maxim, *Salus populi est suprema lex* [The
welfare of the public is the supreme law.], must pre-
vail, as in the cases of war and public danger.   It may be
necessary to demolish a house for offense or defense.   It
may be necessary for a general to enter the lands of a
citizen in pursuit of an enemy, or to erect a fortification
thereon to prevent his incursions; to march over ex-
tensive districts and constantly over private estates
in repelling an invasion.   These are cases of uncon-
trollable necessity, and of pressing public emergency.
*   *   *   This might be a case, too, in which it might
be decorous in a court of justice, for the public safety,
to presume that the legislative authority of the coun-
try would yield a proper indemnity.   But be the law
in such cases as it may, it is sufficient to say that this
case is not in principle like any of those which have
been mentioned.   This is a corporation invested with
certain legislatve powers for the benefit of all within
the sphere of its operation.   It guards the health, it
promotes internal commerce, by opening convenient
highways, and facilitates and preserves external com-
merce by guarding the navigation of the city.   It is
a portion of the sovereign power imparted for the
benefit of the city, and for its good and orderly gov-
ernment.   But although these powers are imparted,
they are by no means arbitrary powers, but are sub-
ject to the salutary restraints of our constitutions and
of such laws as lie at the foundation of all social order,
of such as guard individual rights and furnish them
inviolable security."

In the case of *Haskell* v. *City of New Bedford, supra,*

of the same character as that now in review, it was
said: "One great natural office of the sea and of all
running water is to carry off and dissipate, by their
perpetual motion and currents, the impurities and
offscourings of the land. The owner of any lands
bordering upon the sea may lawfully throw refuse
matter into it, provided he does not create a nuisance
to others. And there can be no doubt that public
bodies and officers, charged by law with the power
and duty of constructing and maintaining sewers and
drains for the benefit of the public health, have an
equal right.  *  *  *  But it by no means follows
that either the city or any private person has the right
to deposit filth upon the sea shore in such quantities
as to create a nuisance to health or navigation. If
the owner of this dock had himself suffered filth to
accumulate therein to such an amount as to create
a nuisance prejudicial to the public health, the munic-
ipal authorities might perhaps have been authorized
to remove such nuisance by filling up the dock, or by
proper proceedings as a board of health to have com-
pelled the owner to remove it.  *  *  *  And the
legislature might doubtless by express words or neces-
sary implication, and making due compensation, have
authorized any private rights in the dock to be taken
for the purpose of suppressing a nuisance.  *  *  *
But the right conferred upon the city of New Bedford
to lay out common sewers 'through any streets or
private lands' does not include the right to create
a nuisance, public or private, upon the property of the
Commonwealth, or of an individual, within tide
water."

In 2 Dillon's Municipal Corporations (4th ed.), sec-
tion 1047, the author, in discussing this subject, says:
"It is, perhaps, impossible to reconcile all of the cases
on this subject, and courts of the highest respectability

have held that if the sewer, *whatever its plan,* is so constructed by the municipal authorities as to *cause a positive and direct invasion* of the plaintiff's private property, as by collecting and throwing upon it, to his damage, water or sewage which would not otherwise have flowed or found its way there, the corporation is liable. This exception to the general doctrine, when properly limited and applied, seems to be founded on sound principles, and will have a salutary effect in inducing care on the part of the municipality to prevent such injuries to private property, and will operate justly in giving redress to the sufferer if such injuries are inflicted. Accordingly, although a municipality having the power to construct drains and sewers may lawfully cause them to be built so as to discharge their refuse matter into the sea, or natural stream of water, yet this right must be so exercised as not to create a nuisance public or private. If a public nuisance is created, the public has a remedy by public prosecution; and any individual who suffers special injury therefrom may recover therefor in a civil action. If, therefore, deposits from sewers constructed by a city cause a peculiar injury to the owner of a wharf or dock, by preventing or materially interfering with the approach of vessels and the accustomed and lawful use of the wharf or dock, the city is liable to the latter in damages."

Again, in section 1051, it is said: "Where such sewers are built and solely controlled by a municipality, many cases, as shown in the sections of the text relating to this subject, have held that the municipality is liable for direct inundations of connecting property with water, filth and sewage, where the sewer, although it may have been built pursuant to a plan adopted by the municipality, is negligently maintained by it after the sewer has been shown by experi-

ence to be insufficient, under ordinary conditions, to prevent such a nuisance and direct injury to the plaintiff's property. In view of the purpose of sewers, their indispensableness to property owners in cities, their vital relation to the public health, the exclusive nature (as the power is usually conferred) of the municipal authorities to construct and to control them, the power and means (where these exist in the municipality) to provide a remedy, and the utter helplessness of the property owner, if no remedy is provided, liabilty to a private action for negligence is doubtless a salutary rule, and one which in the author's judgment is, under the conditions above stated, and where no contrary legislative intent appears, entirely consistent with legal principles."

And again, in section 1051a, it is said: "In such case the injury to the property owner is manifest. It is caused by the sole act or neglect of the municipal authorities. They alone have the power to remove the cause. The property owner is substantially remediless unless he can quicken and secure corporate action by means of a civil suit for damages. The city as the corporate representative of the fasciculus of local interest which makes sewers a necessity for the benefit of all of the inhabitants of the municipality, is the author of the injury which the plaintiff in the case supposed sustains in the attempt to benefit all. The dictate of justice is that no person should suffer unequally, and, if he does, that all should make compensation. If the city has the power and the means by taxation or otherwise to remedy the defective sewer, and yet, under the conditions above defined and limited, continues such sewer, it must on legal principles be liable, unless it can justify its act or omission by its legislative powers and duties relating thereto. Certain it is that these powers were not

given with any such intent. Under the usual consti-tutional limitations on legislative action it is at least doubtful whether powers so injurious to, and so de-structive of private rights could be directly conferred, and if not, how can they be held to be obliquely granted, or to be embraced in large and general grants of authority? Such delegations of authority are to be construed favorably to the rights of the citizen, and may, we think, reasonably be considered as implying a condition that it shall not be exercised so as to inflict unnecessary or at all events negligent injuries upon private property."

The decisions of this court, first cited in this opinion, affirm the liability of a municipal corporation for neg-ligence in the execution of a proper public work, the drainage of streets, if, in constructing it, large quan-tities of water are gathered and confined in one chan-nel, without providing an outlet, and from which they flow upon private lands, and injure the owner. If a public work results in a nuisance these holdings sup-port the liability of the corporation.

What, in view of these authorities, is the rule of limitation as to remedies for injuries resulting from a nuisance, such as that here complained of? The sewer was doubtless of a permanent character, but the injury was not committed, nor was it completed at the time the sewer was constructed, nor was the sewer itself the nuisance. The injury now complained of is the result of the discharge of sewage into the basin. The negligence alleged is not alone in construct-ing the sewer so as to empty into the sluggish current of the harbor, but it is also in continuing to empty the sewage into it without employing any means to re-move it or prevent the nuisance resulting.

The rule of law is that no right to maintain a public nuisance arises by prescription, and a continuing

nuisance, with continuously increasing injury, affords a continuing right of action. As said in 16 Am. & Eng. Ency. of Law, p. 988: "If the nuisance is of a character so permanent that it may fairly be said that the entire damage accrues in the first instance, the statute of limitation begins to run from this time. If, on the other hand, the nuisance may be said to continue from day to day, and to create a fresh injury from day to day, there may be a right of action, although the original right of action has been lost by lapse of time." See authorities there cited. By the same authority it is further said, p. 988: "Where the injury inflicted by a nuisance is not of such a character that it can be ascertained, both as to the past and future by a single action, successive actions lie for new damages so long as the nuisance is continued." Many authorities are cited in support of this proposition and little doubt can exist concerning its accuracy.

The rule in *City of North Vernon* v. *Voegler*, 103 Ind. 314, is distinguished from that applicable here, in that the case was held not to present a cause of action for maintaining a nuisance, but it was there held that a cause of action for damages does not accrue until the wrong or injury has resulted in damage, and *Board, etc.,* v. *Pearson,* 120 Ind. 426, adheres to this rule. See, also, *Schlitz Brewing Co.* v. *Compton,* 142 Ill. 511, 32 N. E. 693; *Bonomi* v. *Backhouse,* E. B. & E. 622. The decisions in *Ohio, etc., R. W. Co.* v. *Simon,* 40 Ind. 278, and *Lucas* v. *Marine,* 40 Ind. 289, cited by counsel for the appellee, give no consideration to the question of the effect of a complete injury, or of a continuing source of injury, but were decided upon the theory that the injurious results had accrued fully more than six years before suit.

Applying these rules to the present case, it is apparent that, from the third paragraph of complaint a

cause of action did not accrue until the year 1890, or within the six year period next before this suit was instituted; that the second paragraph of complaint, alleging the complete destruction in 1883 of the appellant's property for the uses from which its value arises, brought together the wrong or injury and the damages long before the period of limitation, and there are no allegations of new or additional loss. The cause of action pleaded, therefore, in the second paragraph of complaint, was barred, and that pleaded in the third paragraph was not barred. We, of course, venture no opinion as to the periods during which damages may be recovered upon the third paragraph prior to six years and after the bringing of the suit.

The judgment of the lower court is reversed for the error in overruling appellant's demurrer to the appellee's answer to the third paragraph of complaint.