**ACTIVE U.S.A., INC., Appellant–Defendant,**

v.

**Larry McGHEE, Appellee–Plaintiff.**

No. 93A02–0301–EX–66.

Court of Appeals of Indiana.

June 26, 2003.

Nathan B. Maudlin, Ice Miller, Indianapolis, IN, Attorney for Appellant.

Teresa A. Massa, Terrell & Thrall, LLP, Valparaiso, IN, Attorney for Appellee.

**OPINION**

BAKER, Judge.

Appellant–Defendant Active U.S.A., Inc. ("Active") appeals an award of temporary total disability (TTD) benefits by the Indiana Worker's Compensation Board ("Board") granted to Larry McGhee, an employee of Active. Specifically, Active asserts that the award erroneously includes equipment rental rather than compensation solely for driving services. Concluding that the Indiana Worker's Compensation Act's ("Act") definition of wages does not include payment for equipment rental, we reverse the Board's decision.

*FACTS*

The facts of this case are undisputed. On October 26, 2001, McGhee was em-

ployed by Active, a trucking company, as an owner-driver of a tractor-trailer. During a pre-trip inspection of his truck, McGhee suffered an accidental injury to his back.

A Lease Agreement, dated July 28, 2000, controlled McGhee's employment and compensation.[1] The Lease provided that Active would pay McGhee 26% of the gross freight revenue for driving services and 46% of the gross freight revenue for equipment rental. Appellant's App. p. 17–18, 20–22, 29–31. Therefore, McGhee received two separate checks from Active: a "driver's check," or "wages," for the driving service and a "truck check" for equipment rental. The two-check system ensured that owner-drivers were classified as employees rather than independent contractors. McGhee reported the driver's check as wages to the Internal Revenue Service, but reported the truck check as business income, from which he deducted business expenses including his adjusted gross income.

McGhee filed an Application for an Adjustment of Claim with the Board on January 22, 2002. Active accepted his injury as compensable under the Act and paid McGhee $464.95 per week stating that such amount was based on the 26% of the gross freight revenue he received through his driver's check. Appellant's App. p. 13.

McGhee disputed this amount, citing the Lease Agreement which set owner-driver payment at 72% of the gross freight revenue, thus combining both the 26% of the gross freight revenue for driving services and 46% of the gross freight revenue for truck rental.

The parties presented their testimony during a hearing before a single member of the Board on June 13, 2002. On August 22, 2002, the single member found that Indiana Code section 22–3–6–1(d)(3) defines "average weekly wage" to include payment for both services provided and equipment rental. The single member consequently ordered Active to increase McGhee's total temporary disability check to $822 per week, which is the statutory maximum wage for TTD payment under Indiana Code section 22–3–3–22(5)(b).

Active subsequently filed an Application for Review by the Full Worker's Compensation Board. On December 23, 2002, the Full Board, in a 4–3 vote, affirmed the single member's decision and ordered that McGhee's average weekly wage include the equipment rental. Active now appeals.

## DISCUSSION AND DECISION

This court is bound by the factual determinations of the Board, and we will not disturb them unless the evidence is undisputed and leads inescapably to a contrary

---

1. The Lease Agreement references the Collective Bargaining Agreement ("CBA") entered into by Active and the Teamsters Union Local No. 142, of which McGhee is a member. Appellant's App. 12, 15–16, 17–18. Among other things, the CBA states that Active will pay McGhee for exclusive use of his tractor and trailer. Furthermore, the CBA defines the terms of Active employees' compensation. Article 10 of the Collective Bargaining Agreement provides in part:

    *ARTICLE 10—Wages and Equipment Rental:*
    Owners–Drivers shall receive wages and equipment rental in the amounts and per-

centages of the gross freight revenue (see note) received by the company, as indicated as follows:
A. Full Units—Owner–Driver of fleet owned, tractor and trailer combinations, 72% of the gross freight revenue on all commodities including construction equipment, machine tools, and machinery.
1. Driver's wages 26%
2. The balance shall be paid as equipment rental.
Appellant's App. p. 18.

result. *Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 22 (Ind.Ct.App.2001), *trans. denied.* Furthermore, it is the claimant's burden to prove a right to compensation under the Act. *Id.* at 23. In reviewing a decision made by the Board, we will neither reweigh the evidence nor assess the credibility of the witnesses. *K–Mart Corp. v. Morrison*, 609 N.E.2d 17, 27 (Ind.Ct. App.1993), *trans. denied.* While this court is not bound by the Board's interpretations of law, we will reverse the Board's decision only if the Board incorrectly interpreted the Act. *Luz v.Hart, Schaffner & Marx*, 771 N.E.2d 1230, 1232 (Ind.Ct.App.2002). Inasmuch as there are no disputes regarding the facts in this case, we review only the question of law.

The sole issue presented is whether the Act includes equipment rental in its definition of wages. We first note that the Act defined the term "average weekly wage" to mean "the earnings of the injured employee in the employment in which the employee was working at the time of the injury." Ind.Code § 22–3–6–1. In particular, "whenever allowances of any character made to an employee in lieu of wages are a specified part of wage contract, they shall be deemed part of his earnings." Ind. Code § 22–3–6–1(d)(3). Although the Act has been amended many times over the years, that specific provision has remained static, with the exception of punctuation. To be sure, the relevant portions dating back to 1915 provide: "Whenever allowances of any character made to an employee in lieu of wages are a specific part of the wage contract they shall be deemed a part of his earnings." Burns Ann. Ind. Stat. § 8020h3(c) (Bobbs–Merrill 1918).

In *Buhner v. Bowman*, our predecessors on the Appellate Court reviewed the very issue of whether remuneration for equipment rental is included in the definition of wages. 81 Ind.App. 395, 143 N.E. 366

(1924). Bowman was employed by Buhner to haul crushed stone in his wagon drawn by four horses. Bowman was killed in the course and scope of his employment and his family applied for compensation. The deceased had been paid $3.80 per load of stone hauled. However, this fee included payment for the use of his horses and wagon. *Id.* at 397, 143 N.E. at 367. That Court held:

> [T]hat he was paid on the basis of the quantity of stone hauled.... But these earnings were not the earnings of the deceased; they were the earnings of the deceased plus the reasonable value of the use of his said wagon, plus the reasonable value of the use of the four horses used in doing said hauling. For the purpose of adjusting and fixing compensation, *only the earnings of the individual, considered as such, can be taken into consideration....* [H]is earnings, in this case, were simply the reasonable value of the services so being then and there rendered by him—driver and caretaker of said teams so used by him.

*Id.* at 399, 143 N.E. 366. (emphasis added). Thus, the Court has previously deemed equipment rental distinct from wages and not included in worker's compensation awards.

Technological advancements do not render the *Buhner* decision irrelevant. As was the request in *Buhner*, McGhee is asking that his compensation include equipment rental. However, equipment rental is not an "allowance ... made ... in lieu of wages." *See* I.C. § 22–3–6–1(d)(3). The rental is paid *in addition to and separate from* the driving wages.

We note that even McGhee recognizes the distinction between rental and service wages as McGhee's taxes reflect that he has never considered rental payments as wages. McGhee reported his driver's check as wages for tax purposes in 2000

and 2001, yet the truck check is reported as business income, not wages, and offset by business expenses. Appellant's App. p. 34–49.

The distinction between the driving wage and equipment rental is further illustrated by the alternative compensation schemes Active provides. For example, when a driver is given the "run around" the CBA provides for both a driver and truck check. Appellee's App. p. 3. A "run around" occurs when Active dispatches drivers contrary to the previously agreed upon queue of drivers, mostly based upon seniority. Appellee's App. p. 3. When the order is violated, and a driver misses work due to the violation, a "run around" has occurred and Active pays the aggrieved driver both the driver and truck check. Yet run around compensation is distinguishable from worker's compensation. Should a driver be passed over in a "run around" situation, his opportunity for renting his truck to another Active driver has been suppressed in anticipation of his own opportunity to drive. However, here, McGhee may still rent his truck to another driver, who will earn the driver's check while McGhee collects the truck check. Thus, McGhee is by no means precluded from renting his truck to another Active driver.

Finally, the "calculation" of McGhee's compensation bore no relation to the text of the Act. As previously mentioned, Indiana Code section 22–3–6–1(d) defines "average weekly wage" as "the earnings of the injured employee in the employment in which the employee was working at the time of the injury during the period of fifty-two weeks immediately preceding the date of injury, divided by fifty-two." According to the evidence presented, McGhee's driving wages October 27, 2000—October 26, 2001 were $33,263.90. Appellant's App. 41, 44. His average weekly wage was $639.69.[2] Furthermore, Indiana Code Section 22–3–3–8 states injuries that cause total temporary disability occurring on or after July 1, 1976: "[S]hall be paid to the injured employee during the total disability a weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages as defined in Indiana Code section 22–3–3–22 . . . ." Furthermore, Indiana Code section 22–3–3–22 sets forth the maximum and minimum temporary total disability allotments for injuries. When McGhee's average weekly wage is multiplied by sixty-six and two-thirds percent, McGhee's TTD payment is $426.46. Thus we conclude that the Board's award of $822 per week that included equipment rental was erroneous.

Judgment reversed and remanded to the Board for further proceedings consistent with this opinion.

SULLIVAN, J., and DARDEN, J., concur.

---

**2.** The Act requires that compensation be figured from the injured employee's average weekly wage of the fifty-two weeks prior to the accident. Ind.Code § 22–3–6–1(d). According to McGhee's tax form, his average weekly wage was $642.45 in 2001 and $628.10 in 2000. Exh. 4, p. 87, 108. McGhee's average weekly wage from 2001 was multiplied by forty-two representing the number of weeks he worked prior to his accident for a total of $26,982.90. McGhee's average weekly wage from 2000 was multiplied by the outstanding ten weeks for a total of $6,281.00. These two figures were added and divided by fifty-two to equal the average weekly wage of $639.69.