Mandy **BOWLES**, Appellant–Plaintiff,

v.

**GENERAL ELECTRIC**, Appellee–Defendant.

No. 93A02–0408–EX–684.

Court of Appeals of Indiana.

March 31, 2005.

John H. Shean, Shean Law Offices, Bloomington, IN, Attorney for Appellant.

Van A. Nation, Nation Schoening Moll, Fortville, IN, Attorney for Appellee.

## OPINION

FRIEDLANDER, Judge.

On April 3, 2002, Mandy Bowles filed an application for adjustment of claim with the Indiana Worker's Compensation Board claiming permanent disablement from injuries suffered while working for General Electric (GE). GE moved to dismiss Bowles's claim for lack of jurisdiction pursuant to Ind.Code Ann. § 22–3–3–3 (West 1998). A single hearing member of the Board granted GE's motion to dismiss, and Bowles filed for review. After a hearing, the full Board affirmed the single hearing member's decision. On appeal, Bowles raises two issues that we consolidate for review: Is her claim time-barred?

We affirm.[1]

The facts are undisputed. Bowles began working at GE's Bloomington, Indiana refrigerator factory on June 18, 1990. GE assigned Bowles to water line assembly, where her duties consisted of attaching and tightening components of the water line with an air wrench. Bowles was required to complete three units a minute. In 1994, Bowles began to experience pain in her right and left elbows and her family physician, Dr. Larry Ratts, referred her to Dr. Sterling Doster. In May 1995, Bowles underwent two surgeries wherein Dr. Doster performed ulnar nerve transfers on her right and left elbows. Following these surgeries, Bowles was off work for twelve weeks. During this time, Bowles chose to receive short-term disability as opposed to worker's compensation benefits based on consultation with a Union official and her belief that if she utilized worker's compensation, GE "would make me come back sooner than I expected. I mean, sooner than what the doctor wanted me to." *Appellant's Appendix* at 20.[2]

---

1. We heard oral argument in this matter on February 22, 2005, in Indianapolis. We commend counsel on the quality and candor of their presentations.

2. At oral argument, Bowles conceded that the reason she chose not to utilize worker's compensation was because of her perception that the medical care offered by GE was inferior.

Dr. Doster released Bowles to work in August 1995 and Bowles returned to her assembly-line position. Bowles continued to experience tingling in her fingers and general weakness in her hands and, despite some relief, the symptoms she experienced before her May 1995 surgeries never completely subsided. On November 9, 1999, Bowles consulted with Dr. Ratts, and complained of mild tenderness in her right elbow. Dr. Ratts again referred Bowles to Dr. Doster. Bowles met with Dr. Doster on November 9, 1999, and complained to him of increasing pain in her right elbow. According to Dr. Doster's office note from that visit, the pain "seems to be related to work since she states [GE has] raised the line service because of trying to save some money for the company because of competition from Mexico." *Id.* at 33. Thereafter, Dr. Doster diagnosed Bowles's condition as lateral epicondylitis, more commonly known as tennis elbow, and placed Bowles on a treatment regime of an anti-inflammatory medication and use of a counterforce brace. Bowles did not report the injury to GE despite knowing her injuries were work-related.

On April 25, 2000, Bowles left her employment with GE because "I was wore out with it and I knew I had a surgery coming up." *Id.* at 54. Rather than applying for worker's compensation, Bowles applied for and received non-occupational, short-term disability for 26 weeks, and then began receiving long-term disability benefits. In completing a medical form relating to her disability claim in April 2000, Dr. Doster indicated that Bowles could only perform modified duties with restrictions on her arm motions. On May 9, 2000, Dr. Doster performed a third surgery on Bowles, consisting of a right ulnar nerve transposition. Bowles continued to experience numbness and tingling after the May 2000 surgery. Dr. Dale Dellacqua, an associate of Dr. Doster, performed

a fourth surgery on August 3, 2001. Bowles submitted bills for these surgeries to her group health insurance carrier. Bowles subsequently applied for and received social security disability.

On April 3, 2002, for the first time, Bowles filed an application for worker's compensation (the Application) with the Board. On April 29, 2002, Bowles received a Permanent Partial Impairment of five percent maximum upper extremity impairment. GE moved to dismiss the Application as untimely. A single hearing member granted GE's motion and issued the following findings:

1. Defendant's Motion to Dismiss is based upon *Duvall v. ICI Americas, Inc.*, 621 N.E.2d 1122, [sic] (Ind.Ct.App. 1993), on the grounds [that] Bowles' repetitive motion injury was discernible in November, 1999, more than two (2) years before she filed her claim on April [3], 2002, thus barring her claim pursuant to I.C. 22–3–3–3.

2. Bowles argues *Union City Body Company v. Lambdin* 569 N.E.2d 373 (Ind.Ct.App.1991) applies, which states the statute of limitations will begin to run when the injury or condition's "permanence is discernible."

3. Bowles concedes there was a problem in 1999, but argues the condition's permanence was not discernible until Dr. Doster's report of April 4, 2000.

4. His report noted her arm wasn't getting any better and stated "I think we are down to the Graston technique and if that doesn't work then you are looking at a surgical release."

5. Bowles has had prior repetitive motion problems and treated with Dr. Doster in 1995 for problems beginning in 1993.

6. The November 9 and 11 chart notes refer to right elbow; right elbow pain

for 1-1/2 months and increasing right elbow pain for two months, with a diagnosis of lateral epicondylitis.

7. [Bowles returned to work and continued to work at General Electric until April 27, 2000.] Bowles' condition was discernible in November, 1999 and, in fact, she was receiving care; the permanence of the problems was also discernible, the condition was not a minor ache, pain or soreness, but a continuing condition.

*Appellant's Appendix* at 8–9. The full Board adopted the single hearing member's decision with slight modifications indicated by brackets in the above-quoted material.

Bowles invokes this court's jurisdiction pursuant to Ind.Code Ann. § 22–3–4–8 (West, PREMISE through 2004 2nd Regular Sess.).[3] On appeal, Bowles claims the Board erred in dismissing her Application because the permanence of her injury was not discernible until April 2000. Based on *Union City Body Co. v. Lambdin,* 569 N.E.2d 373 (Ind.Ct.App.1991), she asserts that the repetitive stress injuries to her elbows constituted a continuing wrong that occurred on a daily basis at work until her last day of employment—April 25, 2000. Since the statute of limitations should not begin to run until the day of her last injury, she claims the Application, filed April 3, 2002, was timely.

Our standard of review in worker's compensation cases is well settled:

This court is bound by the factual determinations of the Board, and we will not disturb them unless the evidence is undisputed and leads inescapably to a contrary result. *Smith v. Bob Evans Farms, Inc.,* 754 N.E.2d 18, 22 (Ind.Ct.

App.2001), *trans. denied.* Furthermore, it is the claimant's burden to prove a right to compensation under the Act. *Id.* at 23. In reviewing a decision made by the Board, we will neither reweigh the evidence nor assess the credibility of the witnesses. *K–Mart Corp. v. Morrison,* 609 N.E.2d 17, 27 (Ind.Ct.App.1993), *trans. denied.* While this court is not bound by the Board's interpretations of law, we will reverse the Board's decision only if the Board incorrectly interpreted the Act. *Luz v. Hart, Schaffner & Marx,* 771 N.E.2d 1230, 1232 (Ind.Ct.App. 2002). Inasmuch as there are no disputes regarding the facts in this case, we review only the question of law.

*Active U.S.A., Inc. v. McGhee,* 790 N.E.2d 581, 582–83 (Ind.Ct.App.2003); *see also* I.C. § 22–3–4–8(b).

The Board granted GE's motion to dismiss the Application for lack of jurisdiction, viz., the Board held Bowles's claim was barred by the statute of limitations of Indiana's Worker's Compensation Act (the Act). I.C. § 22–3–3–3 provides that a right to compensation under the Act "shall be forever barred unless within two (2) years after the *occurrence of the accident,* ..., a claim for compensation thereunder shall be filed with the worker's compensation board." (emphasis supplied). Our supreme court's decision in *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969 (Ind. 1986), signaled a shift in the understanding of I.C. § 22–3–3–3's use of the word "accident." Before *Evans,* "our decisions generally imposed the requirement of *an* accident, a specific, identifiable, untoward event, for a worker's injury to be compensable." *Union City Body Co. v. Lambdin,* 569 N.E.2d at 373 (emphasis in original);

---

**3.** I.C. § 22–3–4–8(b) provides: "An award by the full board shall be conclusive and binding as to all questions of the fact, but either party to the dispute may, within thirty (30) days from the date of such award, appeal to the court of appeals for errors of law under the same terms and conditions as govern appeals in ordinary civil actions."

*see also, e.g., Metro. School Dist. of Lawrence Township v. Carter,* 803 N.E.2d 695 (Ind.Ct.App.2004) (affirming Board decision compensating employee who fractured her hip at work). *Evans,* however, held that the question was not whether there had been an accident, but rather, whether the injury was accidental within the meaning of the Act. *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969. Thereafter, we expanded the Act to compensate employees for job-related injuries that were cumulative in nature, so-called repetitive stress injuries. *See Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792 (Ind. Ct.App.1994) (finding an employee's herniated disc injury compensable since it was produced partly by the cumulative effect of his work functions); *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122 (Ind.Ct.App. 1993) (holding that carpal tunnel syndrome was compensable under the Act but that employee's claim was time-barred); *Union City v. Lambdin,* 569 N.E.2d at 373 (affirming Board decision compensating employee who "became gradually permanently and totally disabled as the result of the bending, twisting, stooping and lifting he did while working for his employer").

Once the definition of a compensable worker's compensation injury evolved to encompass repetitive stress injuries, however, the question arose regarding when such a claim accrued. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, a case squarely on point with the instant case, provides an answer.

Duvall worked for over six years on ICI's production line at a job involving repetitive motion described as "weigh, load, and sew." *Id.* at 1123. In March 1983, Duvall experienced symptoms of and was diagnosed with carpal tunnel syndrome. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122. Duvall initially filed a worker's compensation claim alleging she suffered from "trigger thumb" on her right hand, a condition complicated by her carpal tunnel syndrome. *Id.* at 1123.[4] At the hearing on her claim, the Board found that Duvall's trigger thumb was caused by her employment at ICI and awarded Duvall medical expenses and fees. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122. In September 1984, Duvall again experienced carpal tunnel syndrome related pain and her doctor prescribed vitamins, nightsplinting, and work restrictions. *Id.* Duvall remained employed at ICI on work restrictions for three more years until ICI terminated her on September 23, 1987. *Id.* Almost four years later, September 13, 1991, Duvall filed a worker's compensation claim asserting that repeated trauma to her right hand caused carpal tunnel syndrome to result from an initial on the job injury. *Id.* After an evidentiary hearing, the full Board adopted the single Board member's findings and entered a decision denying Duvall's claims as time-barred.

On appeal, Duvall argued:

[B]ecause her carpal tunnel syndrome condition is injury from repetitive trauma, her claim accrued on the day of her "accident" which was the last day she could work at ICI. She further reasons that she could not determine the permanence of her injury until ICI terminated her employment because of her injury.

*Id.* at 1126. In affirming the Board's decision, another panel of this court relied on the evidence that Duvall was diagnosed with carpal tunnel syndrome in 1983, was placed on a treatment regime and work restrictions in 1984, but failed to file an application for worker's compensation on

---

4. Duvall's first application for worker's compensation apparently only sought compensation for her trigger thumb condition and did not present a claim for recovery based on carpal tunnel syndrome. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122.

her carpal tunnel syndrome until 1991—over seven years after the "the cumulative effect of Duvall's work demands were discernible as an injury." *Id.* Since her claim accrued once the injury was discernible, her application for worker's compensation was time-barred. Further, the *Duvall* court expressly rejected as "creative but unconvincing," *id.,* the claim that her injury was not discernible until termination

The instant case falls squarely within the legal rule set forth in *Duvall,* but presents even more compelling facts that warrant application of the Act's statute of limitations to bar Bowles's claim. Here, as in *Duvall,* Bowles's work-related repetitive stress injuries were discernible years before she filed an application for worker's compensation. In May 1995, Bowles underwent two nerve transfer surgeries on her elbows that caused her to miss work for twelve weeks. Despite these surgeries, her pain never completely subsided. After an increase in her quota based on foreign competition, Bowles again consulted Dr. Doster regarding her pain, and in November 1999 she was diagnosed with tennis elbow and placed on a treatment regime. Based on Bowles's continuing pain, Dr. Doster scheduled another surgery for May 2000. Bowles testified before the Board, and conceded at oral argument, that she *knew* her injuries were work-related. Despite this, she made the conscious choice *not* to submit her claim to worker's compensation because of her negative perception of GE's doctors. Instead, between 1995 and April 2002, Bowles sought and received short-term disability, long-term disability, social security disability, and submitted bills from her medical procedures to her group health insurance carrier. Moreover, despite her knowledge that a third surgery on her elbows was necessary, and offering that knowledge as a reason for quitting GE in April 2000, Bowles did not file a worker's compensa-

tion claim for almost another two years. Based on the foregoing, Bowles's injury was discernible, at the latest, by November 1999 and her Application was untimely.

 Bowles concedes that if the *Duvall* rule is applied, her claim fails. Therefore, she urges us to refine the *Duvall* rule and hold that a claim accrues when the *permanence* of the injury is discernible, relying on *Union City Body Co. v. Lambdin,* 569 N.E.2d 373. *Union City,* however, is readily distinguishable. In *Union City,* the claimant, unlike Bowles, filed for worker's compensation within two years of discerning his injury, i.e., when he first suffered an acute lumbrosacral sprain and was off work for over three months. *Id.* Moreover, there was no evidence that the *Union City* claimant affirmatively attempted to circumvent the Act by exhausting compensation from other sources before seeking worker's compensation. Finally, the language relied upon from *Union City,* "the statute of limitations will commence to run when its permanence is discernible," *id.* at 374, derives from tort caselaw discussing application of the continuing wrong doctrine. *See Peck v. City of Michigan City,* 149 Ind. 670, 49 N.E. 800 (Ind. 1898) (holding that public nuisance claim based on sewage drainage affords a continuing right of action); *Dolph v. Mangus* 400 N.E.2d 189 (Ind.Ct.App.1980) (holding that damage to plaintiff's land from drainage system had become permanent more than six years before commencement of action and thus claim was barred). The continuing wrong doctrine is a "legal concept used to define when an act, omission, or neglect took place" and causes a statute of limitations to begin to run at the end of the continuing wrongful act. *Follett v. Davis,* 636 N.E.2d 1282, 1284 (Ind.Ct.App. 1994). Often, the doctrine is invoked in the medical malpractice context. *See, e.g.,*

*LeBrun v. Conner,* 702 N.E.2d 754 (Ind. Ct.App.1998) (finding that an optometrist's alleged continuing wrong in failing to diagnose and monitor a patient's glaucoma ceased, and the statute of limitations on a malpractice claim commenced, on the last date the optometrist treated the patient). The continuing wrong doctrine, however, is fundamentally at odds with Indiana's worker's compensation laws since, as the doctrine's name implies, an initial wrongful act is required for its application. Worker's compensation, to the contrary, is designed to provide compensation to injured employees without regard to a determination of fault or wrongful actions. *See, e.g., Waldridge v. Futurex Indus., Inc.,* 714 N.E.2d 783 (Ind.Ct.App.1999). As such, we disagree that language in *Union City* discussing the permanence of an injury should be used as the basis of a rule in repetitive stress injury cases regarding when a claim accrues.[5]

■ Bowles also claims that approval of the *Duvall* rule will result in a sharp increase in the number of worker's compensation claims filed by employees who will err on the side of caution and file a claim at the first sign of a repetitive stress injury. This may well occur, but we fail to see why this possibility should foreclose the rule's application. While claim volume may increase, employers may also be provided greater opportunities to remedy a problematic working condition before a job-related injury increases in severity or becomes irreparable. The Act is intended to be the exclusive remedy for employees injured on the job. *See GKN Co. v. Magness,* 744 N.E.2d 397, 401–02 (Ind.2001) (holding that the Act "provides the exclu-

sive remedy for recovery of personal injuries arising out of and in the course of employment"). We find it untenable to permit Bowles to now seek recovery under the Act despite her conscious rejection of such recovery for over five years.

Bowles's true complaint, we believe, lies not with the application of *Duvall,* but with Indiana's worker's compensation scheme, which requires employees seeking compensation under the Act to put themselves under the direction and control of their employer's doctors. *See* I.C. § 23–3–3–4 (enumerating an employer's responsibility to provide medical care); *see also Daugherty v. Indus. Contracting & Erecting,* 802 N.E.2d 912, 915 (Ind.2004) ("[o]ur courts have long held that under [I.C. § 23–3–3–4] an employee generally is not free to elect at the employer's expense additional treatment or other physicians than those tendered by the employer"). This was something Bowles was unwilling to do. Because Bowles's injury was discernible, at the latest, by November 1999, the Application is time-barred. The Board did not err in its interpretation of the law.

Judgment affirmed.[6]

SHARPNACK, J., and BAKER, J., concur.

---

**5.** For these reasons as well, we necessarily reject, as did the *Duvall* court, Bowles's argument that her injuries constituted a continuing wrong that occurred on a daily basis until she quit.

**6.** Bowles's citation to a variety of other jurisdictions for use in "determining how Indiana courts should rule," *Appellant's Brief* at 13, is interesting but unpersuasive and unnecessary in light of *Duvall.*