Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT:

**GEORGE C. PATRICK**
George C. Patrick & Associates, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEES:

**CARLA R. HOUNSHEL**
**R. JAY TAYLOR, JR.**
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
Indianapolis, Indiana

FILED

Aug 13 2012, 9:38 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| GENE HILDEBRANDT, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1111-EX-1033 |
| | ) | |
| PEPSI AMERICA a/k/a GLOBE TRANSPORT, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD OF INDIANA
Full Board
Application Number C-175683

**August 13, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**MAY, Judge**

Gene Hildebrandt appeals from an order of the Full Indiana Worker's Compensation Board (Board) denying his application for adjustment of claim for a cervical spine condition. Hildebrandt presents three issues, which we consolidate and restate as whether the Board erred in finding Hildebrandt's neck injury is not compensable, as it did not arise out of and in the course of his employment with Pepsi. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 16, 2005, Hildebrandt was a mechanic for Pepsi. He injured his left arm while installing a tire on a Pepsi vehicle. The accident was accepted as a compensable work-related accident, and Pepsi provided all statutorily required temporary total disability compensation and medical expenses. Hildebrandt sought medical treatment, and Pepsi provided medical care by various medical providers. Hildebrandt participated in physical therapy and was diagnosed several months later with a torn bicep in his left arm. On January 28, 2006, Dr. John Diveris performed surgery to repair the bicep.

Hildebrandt continued to have pain in his left arm, which led to further examinations and treatment. Hildebrandt visited Dr. Dwight Tyndall, who discovered a narrowing of Hildebrandt's cervical discs. Dr. Tyndall thought the spinal condition could relate to Hildebrandt's symptoms. Hildebrandt was referred to Dr. Jonathan Javors who determined Hildebrandt's symptoms were likely from scarring around the posterior interosseuous nerve at the elbow and were not caused by the spinal condition. A second surgery was performed by Dr. Nicholas Retson to repair a posterior interosseous nerve compression in Hildebrandt's left elbow that resulted from the initial surgery. Hildebrandt noted the pain persisted to a

2

lesser extent, but Dr. Retson advised him that it would take six to nine months for the pain to subside and he was progressing well.

On April 7, 2008, Hildebrandt filed an Application for Adjustment of Claim. Dr. Tyndall and Dr. Nitin Khanna performed a discectomy and fusion to repair his spine condition on May 8, 2007. Hildebrandt's condition continued to improve over time. Pepsi paid Hildebrandt's worker's compensation benefits and medical expenses for all of the treatment related to his left arm injury, including the elbow surgery. Pepsi did not pay for any of Hildebrandt's expenses related to his cervical spine condition, including his May 8, 2008, surgery.

On February 15, 2011, a Single Hearing Member conducted a hearing to determine whether Hildebrandt was entitled to worker's compensation benefits related to his cervical spine condition and issued an order. The order, in relevant part, reads:

> 1. Plaintiff was an employee of Defendant on March 16, 2005.
> 2. Plaintiff injured his left arm on March 16, 2005 while in the course and scope of his employment for Defendant installing a tire on a van.
> 3. Defendant accepted the compensability of Plaintiff's injury to his left arm.
> * * * * *
> 8. When Plaintiff was initially injured, he sought some medical treatment from Cheryl Krueger, FNP, and only reported an injury to his left arm.
> 9. Defendant provided Plaintiff with medical treatment for his left bicep injury with Dr. John M. Diveris, who performed surgery on Plaintiff on January 20, 2006 to repair a partial thickness tear of his distal bicep tendon.
> 10. On May 1, 2006, Plaintiff underwent an EMG recommended by Dr. Diveris with Dr. Aashish A. Deshpande because Plaintiff was still experiencing numbness in his arm and thumb.
> * * * * *
> 12. In August, 2006, more than a year after his work accident, Plaintiff underwent a cervical MRI which revealed disk herniations at C5-C6 and C-6[sic]-C7.
> 13. On August 17, 2006, Dr. Diveris released Plaintiff at maximum medical

3

improvement with permanent restrictions, and assigned Plaintiff a 7% PPI rating to the upper extremity for Plaintiff's left bicep injury.

14. Pursuant to Dr. Diveris' recommendation, Defendant had Plaintiff evaluated by Dr. Jonathan R. Javors on October 2, 2006 for his left arm and alleged cervical spine injury.

15. Plaintiff, in completing an activity questionnaire, reported to Dr. Javors that he had neck pain, but indicated that is was "not really neck pain – aching in arm and shoulder."

16. Plaintiff also completed an Addendum for Work Related Injuries for Dr. Javors and indicated that the part of the body affected by his work accident was his bicep, and he did not include his neck as an affected body part as a result of his work injury.

17. Additionally, Plaintiff completed a General Health Assessment for Dr. Javors and indicated the location of his pain was in his "left thumb all the way to left shoulder blade," and did not mention neck pain.

18. Dr. Javors' October 2, 2006 report indicates that Plaintiff's neck injury was a personal medical issue which was not casually [*sic*] related to his work accident.

19. Dr. Javors also opined that he did not believe Plaintiff was at a maximum medical improvement for Plaintiff's left arm injury, and recommended additional treatment, specifically treatment for nerve compression in Plaintiff's elbow.

20. Defendant provided Plaintiff with the additional medical treatment with Dr. Nicholas C. Reston [sic] for his left elbow/arm injury, as recommended by Dr. Javors.

21. Defendant denied the compensability of Plaintiff's neck injury.

22. On January 2, 2007, Dr. Retson performed surgery on Plaintiff's left elbow to correct the redial [sic] nerve compression.

23. Dr. Retson subsequently released Plaintiff at maximum medical improvement and assigned Plaintiff a 0% PPI rating for his left elbow injury on June 14, 2007.

24. In his June 14, 2007 report, Dr. Retson also opined that Plaintiff's neck injury was not related to his work accident.

25. After Dr. Javors determined that Plaintiff's neck injury was not related to his work accident, Plaintiff sought treatment on his own for his neck with Dr. Nitin Khanna on March 19, 2007. At that time, Plaintiff reported his pain at 10 out of 10 on a pain scale.

26. After Defendant continued to deny the compensability of Plaintiff's neck injury, Dr. Khanna performed an anterior cervical discectomy and fusion at C5-C6 and C6-C7 on Plaintiff's neck and assigned a [sic] 11% PPI rating for Plaintiff's neck injury.

27. Plaintiff did not report any injury to his neck on March 16, 2005.

4

28. Plaintiff never complained of neck pain to the initial treating provider, Dr. Diveris, or to Dr. Javors.

29. Based upon the totality of the evidence, the Single Hearing Member finds that Plaintiff did not meet his burden of proof that he sustained a compensable injury to his neck on March 16, 2005, while in the course and scope of his employment for Defendant.

\* \* \* \* \*

IT IS FURTHER ORDERED that Plaintiff's neck injury is not compensable and Plaintiff is not entitled to additional TTD benefits, medical treatment or a PPI rating for his neck.

(Appellant's App. at 7-12.) On April 26, 2011, the Full Worker's Compensation Board adopted the order.

## DISCUSSION AND DECISION

Hildebrandt contends the Board erred by rejecting evidence his surgery to repair his cervical spine condition was related to the accident. For an injury to be compensable, it must arise "out of" and "in the course of" the employment. *Ind. Mich. Power Co. v. Roush*, 706 N.E.2d 1110, 1113 (Ind. Ct. App. 1999). Hildebrandt, as the claimant, had the burden to establish entitlement to Worker's Compensation benefits. *Bowles v. Gen. Elec.*, 824 N.E.2d 769, 772 (Ind. Ct. App. 2005), *trans. denied*. The Board is not obliged to make findings demonstrating a claimant is not entitled to benefits; rather, the Board need only determine the claimant has not proved entitlement to benefits. *Triplett v. USX Corp.*, 893 N.E.2d 1107, 1116 (Ind. Ct. App. 2008). In other words, the Board is obliged only to find the claimant did not meet his burden and to enter findings explaining with sufficient particularity the reasons for this determination. *Outlaw v. Erbrich Prod. Co.*, 777 N.E.2d 14, 28 (Ind. Ct. App. 2002).

Because the Board rejected his claim, Hildebrandt appeals from a negative judgment.

5

In reviewing a negative judgment, we will not disturb the Board's findings of fact unless, considering only the evidence that tends to support the Board's determination together with any uncontradicted adverse evidence, we conclude the evidence is undisputed and leads inescapably to a contrary result. *Triplett*, 893 N.E.2d 1107, 116 (Ind. Ct. App. 2008). We will not reweigh the evidence or assess witness credibility. *Outlaw*, 777 N.E.2d at 28.

Here, the evidence is sufficient to support the Board's findings of fact and ultimate conclusion that Hildebrandt's cervical neck condition was not related to his workplace accident.[1] Dr. Javors noted on October 2, 2006, Hildebrandt's cervical spine condition is "a personal medical issue and not causally related to the work injury which occurred in March of 2005." (Appellee's App. at 27.) Dr. Javors attributed the pain Hildebrandt felt in his arm to scarring around his posterior interosseous nerve at his elbow and doubted Hildebrandt's spinal condition would cause the pain. It was Dr. Javors' opinion Hildebrant's spinal condition was degenerative in nature and was more severe on the wrong side of his neck to cause the Hildebrandt's left arm pain.

Hildebrandt argues other medical experts contradicted the conclusions reached by Dr. Javors. However, it is the Board's prerogative to resolve conflicts in expert evidence and we

---

[1] Our review of the record is limited to the stipulated exhibits agreed to by each party because the record of the Single Member Hearing was lost and no proper statement of the evidence was filed. A party may prepare a verified statement of the evidence if a transcript is unavailable, but that party must file a motion to certify the statement of evidence with the trial court or Administrative Agency. Ind. Appellate Rule 31(A). Hildebrandt's Motion to Certify the Statement of Evidence was not filed with the Worker's Compensation Board and, as a result, is outside of the record and cannot be considered on appeal. *See Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996) (matters outside the record cannot be considered by the court on appeal). We must decide the case on the record before us, and we will not speculate as to the facts of the case or possible testimony at the hearing. *Id.*

cannot impinge on the Board's resolution of these questions. *See Perez v. U.S. Steel Corp.*, 428 N.E.2d 212 (Ind. 1981) (the assessment of credibility of witnesses is the province of the Board). We cannot say the evidence before the Board leads us inescapably to an opposite conclusion. The Board weighed the evidence and could properly have relied on the medical findings of Dr. Javors to determine Hildebrandt did not prove his spinal condition was related to his workplace injury. We may not disturb the Board's conclusion.

The Board's findings support its ultimate conclusion that Hildebrandt did not prove his spinal condition arose out of his workplace injury with Pepsi. The Board's decision is not contrary to the evidence and must be affirmed.

Affirmed.

FRIEDLANDER, J., and BARNES, J., concur.