**INLAND STEEL COMPANY,**
**Appellant–Defendant,**

v.

**Ronald J. PAVLINAC, Sr.,**
**Appellee–Claimant.**

**No. 93A02–0608–EX–664.**

Court of Appeals of Indiana.

May 2, 2007.

Michael D. Sears, Jacquelyn S. Pillar, Singleton, Crist, Austgen & Sears, LLP, Munster, IN, attorneys for appellant.

Allan J. Mindel, Sandra O'Brien, Merrillville, IN, attorneys for appellee.

## OPINION

SULLIVAN, Judge.

Appellant–Defendant, Inland Steel Company ("Inland"), appeals following a decision by the Worker's Compensation Board of Indiana ("the Board") in favor of Appellee–Claimant, Ronald Pavlinac, Sr. Upon appeal, Inland presents three issues for our review:

I.    Whether the Board erred by disregarding the stipulation of issues submitted by the parties.

II.   Whether the Board erred in concluding that Pavlinac's Application for Adjustment of Claim was timely filed.

III.  Whether the Board's findings are sufficient to support its conclusion that Pavlinac is permanently and totally disabled.

Pavlinac cross-appeals, requesting damages and appellate attorney fees upon the basis that Inland's appeal is frivolous and was brought in bad faith.

We affirm.

Ronald Pavlinac was a long-standing employee of Inland, having begun employment with Inland as early as May 1977. Pavlinac's job duties included lifting anywhere from thirty-five to one hundred pounds daily and using such things as

jackhammers and sledgehammers. For the last several years of his employment, Pavlinac worked as a castor operator, which required him to lift materials weighing forty to eighty pounds while working in a confined space approximately four feet in height.

Pavlinac first injured his back in the mid–1980s. In 1986, Pavlinac had a laminectomy and discectomy at the L4–L5 level, which was performed by Dr. Elian Shepherd. Pavlinac was off work for approximately four months and then returned to work in his normal capacity. In May 1987, Pavlinac returned to Dr. Shepherd complaining of pain in his lower back and left leg. In a sickness and accident form dated June 1, 1987, Dr. Shepherd listed Pavlinac's diagnosis as "recurrent low back pain." Appendix at 137. Pavlinac received an epidural injection and was released to return to work without restriction on July 28, 1987. On November 17, 1987 and again on March 22, 1988, Pavlinac visited an emergency room complaining about lower back pain and was treated accordingly.

Approximately four years later, on December 29, 1990, Pavlinac suffered another injury to his lumbar spine when, after a freight elevator malfunctioned, he attempted to pull down a large outer door to the elevator. Because this back injury was sustained in the course and scope of his employment, Inland deemed the claim compensable, and thereby provided Pavlinac with the necessary treatment and temporary total disability benefits. Pavlinac was released to return to work without restrictions on January 15, 1991. On December 28, 1992, Pavlinac filed an application for adjustment of claim, which was assigned application number C–121038, seeking additional worker's compensation benefits for the injury sustained on December 29, 1990. Dr. Rex Hooker,

a section manager of Inland's medical department, assessed Pavlinac's permanent partial impairment at 0% for his 1990 back injury.

Upon returning to work, Pavlinac worked at full duty until he fell while getting out of his car in December 1991 and subsequently developed back and leg pain. Diagnostic testing revealed very early degenerative changes of the lumbar spine. Pavlinac was treated conservatively for three months, with no improvement. In February 1992, a myelogram was performed, which revealed a herniated disc at L4–L5. On March 2, 1992, Pavlinac underwent a percutaneous lumbar discectomy at L3–L4 and L4–L5. Shortly thereafter, Pavlinac underwent an anterior cervical interbody fusion at C5–C6. Pavlinac's lower back and neck conditions were much improved, and he returned to work.

In April 1993, Pavlinac, after again developing pain in his back and neck, underwent a lumbar microdiscectomy at L5–S1. Following this surgery, Pavlinac made gradual improvement with some residual neck and back pain. In August 1993, his physical examination was completely normal, and he was released to return to work with no restrictions.

In July of 1994, Pavlinac developed pain in his thoracic spine and was taken off work. It was determined that there was a recurrence of the herniated lumbar disc at L4–L5, and Pavlinac underwent a percutaneous lumbar discectomy at L4–L5 on August 31, 1994, with good results. In November 1994, his lower back pain returned, and Pavlinac was referred to Dr. Donald Kucharzyk, who performed surgery on February 23, 1995. This surgery was quite extensive and took several months for recovery. Pavlinac returned to work June 12, 1995. A bone stimulator which had been implanted previously was removed on September 12, 1995. Pavlinac

returned to work with restrictions in March of 1996. By April, Pavlinac made further improvements, and his work status was changed to being without restrictions.

On August 16, 1997, Pavlinac was injured at work when a steel pipe weighing between eight and fourteen pounds fell approximately ten feet, hitting him on his head. As a result, Pavlinac suffered migraine and tension headaches and cervical pain. Inland deemed this to be a compensable injury for worker's compensation and thus provided Pavlinac with the necessary medical treatment and temporary total disability benefits. Pavlinac returned to work on August 26, 1997. On June 15, 1999, Pavlinac filed an application for adjustment of benefits, which was assigned application number 150075, seeking additional worker's compensation benefits for the August 16, 1997 injury. Dr. T.R. Miemiec assessed Pavlinac's permanent partial impairment resulting from this injury as 0%.

In June 1998, Pavlinac injured his back while fixing his air conditioner. He developed pain in his lower back and muscular spasms and was treated with medications. On September 30, 1998, Pavlinac underwent surgery to remove lumbar instrumentation. Pavlinac returned to work with no restrictions on October 23, 1998. Thereafter, Pavlinac worked on a full-time basis at his usual occupation, which included heavy lifting.

In April 1999, Pavlinac lifted a heavy bucket at work and felt pain in his back and down his right leg and anterior hip. Pavlinac continued to work following this incident and was treated conservatively until he could no longer tolerate the type of work. Pavlinac's last day of employment with Inland was June 8, 1999. On October 20, 2000, Pavlinac filed an application for adjustment of claim, which was assigned application number 155255, in which he indicated that he suffered "Repetitive trauma to back" and that the "Date of injury/last exposure/death" was June 8, 1999. Appendix at 42.

On November 10, 1999, Dr. Frank Phillips performed an independent medical evaluation of Pavlinac and concluded as follows:

"Mr. Pavlinac really represents 'failed back surgery' resulting in significant pain and disability. The indications for many of the surgical procedures are unclear to me.... I feel that Mr. Pavlinac is at maximal medical improvement. I believe his future care revolves around continued pain management. I think he is unlikely to return to work in view of the multiple failed surgeries and ongoing pain. I believe that Mr. Pavlinac is significantly disabled as a result of his spinal condition.

I am unable to determine whether a causal relationship between the 1997 and 1990 traumatic events and Mr. Pavlinac's spinal condition exists. Certainly heavy labor and repetitive trauma could precipitate symptoms in someone with spinal problems." Appendix at 53.

On May 7, 2002, Dr. Joseph Koscielniak, Jr., opined that Pavlinac has:

"progressive degenerative disease of his lumbar and cervical spine. His initial injury was work related in 1986. While the fall at home in 1991 may have been a contributing factor at that time, his ongoing continuing problems are work related.... [O]ver a period of time with the type of repetitive heavy lifting, twisting, turning, and bending in a confined area that [Pavlinac's] job entailed, it is my feeling that with a reasonable degree of medical and surgical certainty that the ultimate progressive degenerative disk disease was related to his employment. I feel that ... as of June of 1999 [Pavlinac] was and is permanently

and completely disabled and unable to work in any capacity." Appendix at 56. Dr. Koscielniak assessed a permanent partial impairment rating of seventy percent. Dr. Jiroj Thephasdin, who had been treating Pavlinac's back condition since 1992, concluded that Pavlinac's condition "was originally caused by the injury at work. Since then it became degenerative and progressive in type. The condition was aggravated by heavy labor type of work and multiple incidences [sic] at work." Appellee's Supplemental Appendix at 152.

This matter was submitted to the Single Hearing Member.[1] Pavlinac filed his proposed findings of fact and conclusions of law with the Single Hearing Member on July 18, 2005. The stipulation of the parties was filed on July 22, 2005. Inland filed its proposed findings of fact and conclusions of law on August 11, 2005. On November 23, 2005, the Single Hearing Member issued an order in which the Single Hearing Member accepted all of the parties' stipulations regarding the facts and issues. After setting forth findings of fact, the Single Hearing Member made the following conclusions:

"1. While [Pavlinac] suffered a number of individual work-related injuries to his head, cervical and lumbar spine, it was not until April of 1999 that [Pavlinac] sustained the final, 'Straw which broke the camel's back.'

2. The cumulative effect of the prior work-related injuries, along with the in-

cident in April of 1999 led to [Pavlinac's] permanent and total disability.

3. [Pavlinac's] Application for Adjustment of Claim filed October 20th, 2000 is timely filed following the April, 1999 incident, and following disability.

4. [Pavlinac] has sustained a 70 percent whole body permanent partial impairment as a result of his numerous work-related injuries to his head, cervical and lumbar spine, culminating in the April, 1999 bucket lifting incident.

5. [Pavlinac] is permanently and totally disabled as a result of the injuries he sustained in the course and scope of his employment with [Inland].

6. [Pavlinac] is entitled to future medical treatment to reduce and/or limit the extent of his impairment, specifically pain management through a qualified specialist." Appendix at 25–26.

On December 14, 2005, Inland filed an application for review by the Full Board. On June 26, 2006, the parties appeared before the Full Board and presented their arguments.[2] On July 19, 2006, the Full Board adopted the Single Hearing Member's decision. In its order, the Full Board further stated as follows:

"The Full Worker's Compensation Board is not bound by the issue as presented by the parties at the Single Hearing Member hearing.[3] While no distinct injury appears to have occurred

---

1. It is unclear whether Pavlinac submitted all three of his applications for adjustment of claim to the Single Hearing Member for review. At the very least, the Single Hearing Member reviewed application number 155255 filed October 20, 2000, which alleged the injury sustained as "repetitive trauma to back," and the Full Board affirmed the Single Hearing Member's decision.

2. No transcript of this hearing was included in the record on appeal.

3. There does not appear to have been a final hearing before the Single Hearing Member. Instead, the parties submitted a stipulation as to certain facts, to the evidence to be considered by the Board, and to the issues to be decided by the Board. The parties each submitted proposed findings of fact and conclusions.

on June 8, 1999,[4] [Pavlinac] sustained many distinct work-related injuries prior to that, the most recent of which was in April of 1999. Further, the Application for Adjustment of Claim form requests an alleged date of injury/last exposure/death. This form does not specifically deal with the situation of a recurring injury/exacerbation through routine work duties, and [Pavlinac's] use of his last date of employment with [Inland] was proper." Appendix at 12–13.

Inland filed a notice of appeal from the Full Board's order on August 1, 2006.

■ Upon review of a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions. *Four Star Fabricators, Inc. v. Barrett*, 638 N.E.2d 792, 794 (Ind.Ct. App.1994). We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a result contrary to the Board's. *Id.* In other words, upon review of the Board's findings of fact, we must disregard all evidence unfavorable to the decision and may consider only the evidence and reasonable inferences drawn therefrom which support the Board's findings. *Id.* While we do not owe this same measure of deference to the Board's legal conclusions, we will disturb the Board's conclusions only if the Board incorrectly interpreted the Worker's Compensation Act. *Id.*

*Stipulation*

■ Inland first argues that the Board erred by disregarding the stipulation of the parties with regard to the issues to be decided by the Board. A "stipulation" refers to " 'a voluntary agreement between opposing parties concerning some relevant point.' " *Havlin v. Wabash Int'l*, 787 N.E.2d 379, 382 (Ind.Ct.App.2003) (quoting BLACK'S LAW DICTIONARY 1427 (7th ed.1999)). Here, as in *Havlin*, the "relevant point" is with regard to the issues stipulated by the parties and presented to the Board for review.

■ The parties stipulated that the following issues were to be decided by the Board:

"1. Whether [Pavlinac] suffered a compensable injury arising out of and in the course of his employment with [Inland] on June 8, 1999.

2. The extent and duration of [Pavlinac's] injuries, if any.

3. The amount of temporary total disability owing to [Pavlinac], if any.

4. The amount of permanent partial impairment [Pavlinac] incurred, if any.

5. Whether [Pavlinac] is permanently and totally disabled as [a] result of the injuries he alleged to have incurred on June 8, 1999.

6. Whether [Pavlinac] is entitled to future medical treatment to reduce or limit the extent of his impairment." Appendix at 39–40.

The Single Hearing Member expressly adopted the issues as stipulated by the parties. Thus, the parties were limited to submitting and the Board to considering only evidence relevant to the stipulated issues. *See Havlin*, 787 N.E.2d at 382.

Inland asserts that by stipulating to the specific issue of whether he suffered a work-related injury on June 8, 1999, and to other issues specifying that date, Pavlinac stipulated that the date of the accident giving rise to the work-related injury for

---

**4.** It appears that the June 8, 1999 date referred to Pavlinac's last date of work following the incident of April, 1999.

which he was seeking benefits was June 8, 1999. Inland maintains that by so stipulating, Pavlinac was "foreclosed from disproving this fact by submitting evidence relating to an injury allegedly suffered prior to June 8, 1999." Appellant's Brief at 10. Inland also argues that the Board was required to confine its review to the issue of whether Pavlinac suffered injury as a result of an actual work-related accident on June 8, 1999 and was foreclosed from considering evidence relating to injuries suffered as a result of any accidents not occurring on that date.

Pavlinac maintains that the Board's award is consistent with the stipulation of the parties and the jointly submitted evidence. Pavlinac asserts that it was the understanding of the parties that the claimed injury was one of a repetitive nature and that the date given represented the culmination of a repetitive injury. We agree with Pavlinac.

█ It is undisputed that the injury alleged to have occurred on "June 8, 1999" was one of "[r]epetitive trauma to back." Appendix at 42. Indeed, Inland acknowledged this was the type of injury alleged in its proposed findings of fact which it submitted to the Single Hearing Member. The type of injury alleged by Pavlinac is not the type of injury which results from any one specific accident. Our courts have recognized that an "accidental injury" under the Worker's Compensation Act includes injuries which occur incrementally over time. *Barrett*, 638 N.E.2d at 795. "[T]he repetitive motions required by the employee's job functions may give rise to a compensable injury, *even though the injury is not attributable to any discrete and identifiable date, time or event.*" *Id.* (emphasis supplied). In such cases, the claimant is not required to show that the resul-

tant injury and damage " 'was due to one particular blow which produced the particular injury.' " *Id.* (quoting *Lovely v. Cooper Indus. Prod., Inc.*, 429 N.E.2d 274, 278–79 (Ind.Ct.App.1981)).

█ Given the nature of the injury alleged—repetitive trauma to back—it is clear that the June 8, 1999 date used in the stipulation did not limit the issue to only consideration of whether a compensable injury was suffered as a result of an accident occurring on that date. Rather, as found by the Board, the date set out in the stipulated issue essentially reflected the culmination of the "repetitive trauma" injury which was alleged to have been sustained. Therefore, Pavlinac's submission of evidence [4] relating to his history of back problems stemming both from work-related and personal activities not occurring on June 8, 1999, his evidence as to the nature of his job duties, and the Board's consideration of such evidence, was proper as pertinent to the claim for a repetitive-type injury which was presented to the Board. We further observe that by stipulating to the evidence which was to be submitted to the Board, Inland agreed to put before the Board evidence setting forth the details of Pavlinac's medical history as relating to his back condition and of various injuries suffered by Pavlinac as a result of work-related and personal accidents not occurring on June 8, 1999.

Further, in apparent response to Inland's narrow interpretation of the use of the June 8, 1999 date, the Board noted that its application form was not well-suited for claims of recurring/repetitive/exacerbation-type injuries in that the application form requests the claimant provide a "Date of injury/last exposure/death." Under the circumstances presented, and

---

4. We note that the Pavlinac and Inland stipulated to the evidence to be submitted to the Board for consideration upon review of Pavlinac's claims.

specifically noting that Pavlinac's claim was for a "situation of a recurring injury/exacerbation through routine work duties," the Board concluded that Pavlinac's use of the last date of his employment was "proper." Appendix at 13. As explained by Pavlinac, the June 8, 1999 date was his last day of work because he could no longer tolerate that type of work. As noted above, it is clear that the Board found this date to represent the culmination of the injury for which Pavlinac was seeking worker's compensation benefits.

We thus disagree with Inland insofar as Inland asserts that the Full Board's statement that it was "not bound by the issue as presented by the parties at the Single Hearing Member hearing" was an indication that the Full Board was "disregarding" the parties' stipulated issues.[5] Rather, we think the Full Board was simply indicating that it did not interpret the stipulation as narrowly as Inland suggested. Indeed, we too do not read the stipulation of issues as narrowly as Inland would have us. Having reviewed the record, we conclude that the Board's findings and conclusions are consistent with the stipulated issues and stipulated evidence. Based upon the foregoing, we conclude that the Board did not disregard the parties' stipulation with regard to the issues presented for review.

### Statute of Limitation

Inland next argues that the Full Board erred in concluding that Pavlinac's application for adjustment of claim was timely. In response, Pavlinac asserts that Inland's argument is disingenuous insofar as the issue of whether Pavlinac's claim was filed within the two-year statute of limitation was not set forth in the stipulation of issues submitted by the parties for the Board's review. Pavlinac further asserts that such argument is brought in bad faith, noting that Inland has sought to hold Pavlinac to a narrow interpretation of the stipulated issues, and then seeks a determination by the Board upon an issue which Inland claims is "implicit" in the stipulation of the issues submitted by the parties. Reply Brief at 5. We agree with Pavlinac that Inland's attempt to raise the statute of limitation defense is inconsistent with its argument that the stipulation of issues should be literally and narrowly construed as against Pavlinac. There is not even a suggestion in the language used in the stipulations that Inland intended to assert the defense of statute of limitations. Such issue was not properly presented to the Board for review as it was not stipulated between the parties as an issue to be decided.

Nevertheless, we observe that, although the issue was not submitted to the Board, the Board considered the timeliness of the filing of Pavlinac's claim and concluded that such was filed within the two-year statute of limitation. The Board found that Pavlinac was involved in an accident at work in 1999, and that, while Pavlinac had prior work-related injuries to his head, and cervical and lumbar spine, it was not until the April 1999 accident that he sustained the final " 'Straw which broke the camel's back.' " Appendix at 25. The Board essentially concluded that the cumulative effect of the prior work-related injuries became discernible following the April 1999 accident when Pavlinac attempted to

---

5. We note that in its order, the Board also indicated that it believed that counsel for Inland "more likely drafted" the stipulation of the parties. Inland argues that such is not the case and that, on this basis alone, the Board's decision must be overturned. The Board's statement in this regard is not based upon any evidence submitted for review of Pavlinac's claims. Nevertheless, it does not appear that such observation, even assuming it is erroneous, affected the Board's decision.

return to work, but was unsuccessful. Noting the impact of the April 1999 accident and concluding that the "repetitive trauma" injury culminated on June 8, 1999, when the rigors of the job proved too much for Pavlinac because of the condition of his back, the Board found that Pavlinac's October 20, 2000 filing of his application for adjustment of claim was timely.

Pursuant to Indiana Code § 22-3-3-3 (Burns Code Ed. Repl.1997), an application for worker's compensation benefits must be filed within two years from the occurrence of the accident which resulted in the injuries for which the employee seeks compensation. When the claim is one for repetitive trauma, this court has held that an employee's claim for repetitive trauma injuries accrues when the cumulative effect of the work demands is discernible as an injury. *Barrett*, 638 N.E.2d at 795.

It is undisputed that Pavlinac suffered several back injuries over the years and that several of these injuries were sustained in the scope and course of his employment with Inland while others were not. As found by the Board, after each injury, Pavlinac was assigned a 0% permanent partial impairment rating and was released from medical care and returned to work with no restrictions, with the most recent release being October 23, 1998. Thereafter, Pavlinac worked on a full-time basis at his usual capacity. The Board further found that in April 1999, Pavlinac had a specific, identifiable accident which was deemed by the Board to be the "[s]traw that broke the camel's back." Given that Pavlinac attempted to return to work after this last accident, but was unsuccessful because the demands of the job proved too great given the condition of his back, his last date of employment essentially represented the culmination of the repetitive trauma to his back. It was on this date, June 8, 1999, when it became clear that Pavlinac sustained an injury resulting from the cumulative effect of his prior back injuries, the incident in April 1999, and the repetitive heavy lifting, twisting, turning, and bending which were part of his normal day-to-day job duties. *See Barrett*, 638 N.E.2d at 795; *Union City Body Co., Inc. v. Lambdin*, 569 N.E.2d 373, 374 (Ind.Ct.App.1991). It is this injury from which Pavlinac will never be able to return to work. Thus, Pavlinac's October 20, 2000 application for benefits for "repetitive trauma to back" was timely as it was filed within two years of the date such injury was discernible.

Inland's argument that Pavlinac's claim for a "repetitive trauma" injury was discernible as early as 1986 when Pavlinac suffered his first work-related injury which affected his back, or at the latest, "certainly ascertainable" prior to October 20, 1998, two years prior to the filing of his claim for such repetitive injury, is unavailing and essentially a request that we reweigh the evidence and come to a conclusion contrary to that of the Board. Appellant's Brief at 12. In support of such argument, Inland notes Pavlinac's long medical history relating to the problems with his back, specifically noting the numerous surgeries and procedures Pavlinac has undergone. What Inland fails to note, however, is that, although Pavlinac had a long history of back problems, after each previous incident, he ultimately improved to a point where he no longer required medical care and was able to return to work without restrictions. It is this fact which seemingly distinguishes Pavlinac's claim from both *Duvall v. ICI Americas, Inc.*, 621 N.E.2d 1122 (Ind.Ct.App.1993) and *Bowles v. General Electric*, 824 N.E.2d 769 (Ind.Ct.App.2005), *trans. denied*, cases cited by Inland.

In *Duvall*, the claimant first experienced symptoms and was diagnosed with carpal tunnel syndrome in March of 1983. The

claimant sought compensation for carpal tunnel syndrome by filing a claim for worker's compensation benefits on September 23, 1987, the day she was terminated because of her injury, asserting that carpal tunnel syndrome was a repetitive trauma, the permanence of which could not be determined until her last day of employment. In affirming the Board's conclusion that the application for benefits was untimely, the court noted the Board's conclusion that the claimant's claim for benefits accrued when the claimant was placed on a treatment regime and work restrictions in 1984, which remained in effect until her termination in September of 1987, because it was at that time that the cumulative effect of the claimant's work demands was discernible as an injury. 621 N.E.2d at 1127.

Similarly, in *Bowles*, the claimant suffered a repetitive trauma injury in 1994, underwent two surgeries in 1995, and was released to return to work in August 1995. Despite some relief, the symptoms never completely subsided. Four years later, in November 1999, the claimant consulted a doctor regarding increasing pain, at which time she was placed on a treatment regime and had to wear a brace. The claimant returned to work with restrictions, and during 2000 and 2001, underwent four additional surgeries. The claimant filed for worker's compensation benefits in April 2002, but the Board dismissed the claim as untimely. 824 N.E.2d at 771. The Board concluded that the permanence of the claimant's condition was discernible in November 1999 when she sought medical care. *Id.* at 772. The Board determined that the condition was not a minor ache, pain or soreness, but was a continuing condition. *Id.* Observing the appellate standard of review which binds this court to the Board's factual determinations and permits this court to reverse a Board's decision only if the Board incorrectly interprets the Worker's Compensation Act, this court upheld the Board's determination that the claim was untimely. *Id.* at 772–74. This court emphasized the Board's focus on the continuing nature of the injury and the fact that despite surgeries and treatment, the pain never subsided. *Id.* at 774.

Here, Pavlinac suffered several prior back injuries necessitating various treatments and surgeries. Unlike both *Duvall* and *Bowles*, however, he was eventually released from medical care and returned to work with no restrictions. Indeed, following two prior work-related injuries for which Inland provided worker's compensation benefits, Pavlinac was assessed with no permanent partial impairment. Further, as discussed above, the Board found that Pavlinac was involved in an incident in April 1999, and that that accident, combined with the cumulative effect of prior injuries and the demands of the job, constituted a repetitive injury culminating on his last day of employment, June 8, 1999, clearly within two years of the filing of his application. Based upon the foregoing, and keeping in mind our standard of review, we cannot say that *Duvall* and *Bowles* dictate that the Board's conclusion that Pavlinac's claim was timely brought is erroneous.

### Sufficiency of the Evidence

Inland claims that the Board's findings do not support its conclusion that Pavlinac is permanently and totally disabled as a result of a work-related injury. Inland first argues that Pavlinac did not meet his burden to prove that he has a right to compensation under the Worker's Compensation Act. *See Danielson v. Pratt Indus., Inc.,* 846 N.E.2d 244, 247 (Ind.Ct. App.2006). Inland asserts that the stipulated evidence shows that Pavlinac suffered from ongoing back pain "wholly un-

related" to his employment as early as 1986. Appellant's Brief at 13. Inland further asserts that the fact that following the two previous work-related injuries, Pavlinac received a permanent partial impairment rating of zero percent supports its claim that Pavlinac's work-related injuries were trivial in nature and that Pavlinac's back pain is unrelated to his employment.

The Board concluded that "[t]he cumulative effect of the prior work-related injuries, along with the incident in April 1999 led to [Pavlinac's] permanent and total disability" and that Pavlinac "is permanently and totally disabled as a result of the injuries he sustained in the course and scope of his employment with [Inland]." App. at 25. In arriving at this conclusion, the Board made extensive findings regarding Pavlinac's medical history as it related to his back condition, specifically noting work-related and non-work-related injuries and the treatment and multiple surgeries Pavlinac underwent since his first work-related injury in the mid–1980s.

■■ The Board further noted the opinions of several physicians. Specifically, Dr. Phillips opined that Pavlinac's problems were the result of "failed back surgery" and that Pavlinac had achieved maximum medical improvement and was unable to return to work. Dr. Thephasdin, Pavlinac's treating physician since the early 1990s, found Pavlinac's back problems to have originally been caused by an injury at work and that such injury had become degenerative and progressive in nature. The Board noted Dr. Thephasdin's opinion that Pavlinac's condition was "aggravated by heavy labor and multiple incidences [sic] at work." Appendix at 24. Dr. Thephasdin stated that Pavlinac had a "significant degree of permanent disability or impairment." Appendix at 24. The Board also noted Dr. Koscielniak's opinion that Pavlinac sustained an initial work-

related injury in 1986, that Pavlinac recovered from his 1991 non-work-related injury, but that "over a period of time, 'With the type of repetitive heavy lifting, twisting, turning, and bending in a confined area that [Pavlinac's] job entailed, it [was his] feeling that with a reasonable degree of medical and surgical certainty that the ultimate progressive degenerative disk disease was related to [Pavlinac's] employment.'" Appendix at 24. Dr. Koscielniak stated that Pavlinac was "permanently and completely disabled and unable to work in any capacity." Appendix at 24. Clearly the medical evidence overwhelmingly supports the Board's conclusion that the back injury for which Pavlinac seeks compensation is directly related to his employment with Inland.

With regard to the fact that following two prior work-related injuries Pavlinac was assessed with zero percent partial impairment rating, a reasonable inference could be drawn that Pavlinac underwent appropriate treatment or surgeries and that he fully recovered therefrom. Inland's assertion that such fact should be interpreted according to their viewpoint is simply a request for us to reweigh the evidence. We will not do so.

■■ Inland also claims that two statements set forth in the Board's findings are unsupported by the evidence before the Board. Specifically, Inland maintains that there was no evidence that Pavlinac required surgery in 1995 because he returned "to full work duties too soon following previous back surgeries." Appendix at 21. After concluding that the 1995 surgery was "directly related to his heavy lifting and strenuous work for [Inland]," a conclusion which Inland does not challenge, the Board noted that the surgery may also have been due *"perhaps* to having returned to full work duties too soon following previous back surgeries." Appendix at

21. Having reviewed the record, this finding, although perhaps not based upon any such express evidence in the record, is a reasonable inference to be drawn from the evidence before the Board. To find otherwise would require us to reweigh the evidence, a task which we will not do upon appeal from the Board's decision. In any event, we note that the challenged finding is trivial, conjectural, and likely had little impact upon the Board's ultimate determination with regard to Pavlinac's claim for benefits.

■■■ Inland also challenges the Board's finding that Dr. Chuman's note that Pavlinac "[i]njured himself" on August 16, 1997 is "indicative of Dr. Chuman's viewpoint favoring [Inland]." Appendix at 22. Inland asserts that this finding is unsupported by the record and unreasonable. The Board noted that Dr. Chuman was one of Inland's referral physicians. The Board further observed that the August 16, 1997 incident occurred when a steel pipe weighing between eight and fourteen pounds fell a number of feet and hit Pavlinac on the head. The Board's finding with regard to Dr. Chuman's viewpoint is reasonable when one considers the absurdity of his conclusion that Pavlinac "injured himself" when a steel pipe fell from above and hit him on the head. The Board's finding suggests that it found Dr. Chuman's opinion lacking in credibility and made from a viewpoint favoring Inland. We will not disturb the Board's findings unless the evidence is undisputed and leads inescapably to a result contrary to the Board's. Based upon the evidence before the Board, we conclude that the Board's finding that Dr. Chuman was prejudiced in favor of Inland is supported by the record and is reasonable.

Finally, Inland challenges the sufficiency of the evidence by again resorting to its argument that the stipulation between the parties precluded the Board from considering anything other than whether there was an identifiable accident on June 8, 1999 which resulted in injury and from considering Pavlinac's claim for repetitive trauma. We have already rejected this argument above.

In sum, the Board's findings are supported by the evidence, and the findings support the Board's conclusion that Pavlinac suffered a work-related, repetitive-type injury which resulted in permanent partial impairment. Inland has made no colorable argument challenging the sufficiency of the evidence or the merits of the Board's conclusion.

*Damages*

Pavlinac requests this court to increase the Board's award by ten percent rather than the automatic five percent increase provided for by Indiana Code § 22–3–4–8(f) (Burns Code Ed. Repl.1997). Specifically, subsection (f) of that statute provides that "[a]n award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%)." Pavlinac claims that an increase of ten percent is justified because Inland's claims upon appeal were frivolous and brought in bad faith.

■■■ Generally, an order to increase the award by ten percent is not warranted unless the issues presented upon appeal are frivolous, appellate review is thwarted by the employer's actions, or there has been an extended period of time within which the injured worker has been prevented from obtaining worker's compensation benefits. *See Manous v. Manousogianakis,* 824 N.E.2d 756, 768–69 (Ind.Ct. App.2005); *Tanglewood Trace v. Long,* 715 N.E.2d 410, 416 (Ind.Ct.App.1999), *trans. denied.*

In the present case, Inland presented issues which sought to have this court go against our standard of review or ultimately proved to be disingenuous or trivial. We further note the extended period of time that Pavlinac has been prevented from obtaining worker's compensation benefits. Therefore, under the facts of this case, we find it appropriate to increase Pavlinac's award by ten percent. *See Graycor Indus. v. Metz*, 806 N.E.2d 791, 802 (Ind.Ct.App.2004) (ordering an increase of the injured worker's award by ten percent given the extended period the injured worker was prevented from obtaining worker's compensation benefits and the "patent disingenuity" with regard to some of employer's arguments), *trans. denied.*

In his brief and by separate motion, Pavlinac also requests an award of damages, including an award of attorney fees, pursuant to Indiana Appellate Rule 66.[6] Appellate Rule 66 provides that a court "may assess damages if an appeal . . . is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees under the rule is limited to instances when the appeal is " 'permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay.' " *Metz*, 806 N.E.2d at 801 (quoting *Boczar v. Meridian Street Foundation*, 749 N.E.2d 87, 95 (Ind.Ct.App.2001)). Often attorney fees are awarded where procedural or substantive bad faith is shown. *Id.* Procedural bad faith stems from flagrant violations of appellate procedure; substantive bad faith is found where appellate arguments are utterly devoid of all plausibility. *Id.* Pavlinac does not claim procedural bad faith, but asserts substantive bad faith on Inland's part in light of the frivolity, merit-lessness, and apparent bad faith in asserting several of its arguments upon appeal.

Although many of Inland's arguments were disingenuous or trivial in nature thereby supporting our order to increase the Board's award by ten percent, there is no allegation that Inland deliberately presented such issues so as to delay Pavlinac's receipt of worker's compensation benefits. Nor does it appear to us that Inland's brief upon appeal was written in a manner calculated to require the maximum expenditure of time by both Pavlinac and this court. *See Gabriel v. Windsor, Inc.*, 843 N.E.2d 29, 49–50 (Ind.Ct.App. 2006). In short, while we have found it appropriate to order the Board's award to be increased by ten percent, we do not think Inland's actions upon appeal were so egregious or deliberate so as to warrant an additional award of damages, including attorney fees, pursuant to Appellate Rule 66.

The award of the Worker's Compensation Board is affirmed, and it is ordered that the Board's award be increased by ten percent.

SHARPNACK, J., and CRONE, J., concur.

---

6. Pavlinac requests an award of attorney fees in excess of $10,000.