Awilda **GONZALEZ**, Surviving Spouse of Antonio Laguna, Deceased, Appellant–Claimant,

v.

**WAL–MART ASSOCIATES, INC.,** Appellee–Employer.

No. 93A02–0709–EX–758.

Court of Appeals of Indiana.

Feb. 18, 2008.

Daniel Ostojic, Ostojic & Ostojic, Portage, IN, Attorney for Appellant.

Thomas F. Cohen, Hunt, Suedhoff, Kalamaros LLP, South Bend, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Awilda Gonzalez and Antonio Laguna married in 1987 but eventually separated and maintained different residences. Two months after starting a new job, Antonio died as the result of a work-related injury. Awilda applied for benefits pursuant to the Worker's Compensation Act (WCA),[1] which requires the spouses to have been living together at the time of the decedent spouse's death or, alternatively, for the spouse to have been totally or partially dependent on the decedent spouse to collect benefits. After examining the record, we find that the Worker's Compensation Board (the Board) did not err by concluding that Awilda is not entitled to compensation because she was not living with her husband at the time of his death and there was contradictory evidence regarding his alleged financial support.

Appellant-claimant Awilda appeals the decision of the Board denying her application for benefits pursuant to the WCA. Specifically, Awilda argues that she is entitled to benefits because the Board erred by concluding that she is not a presumptive dependent pursuant to Indiana Code section 22–3–3–19 or, alternatively, a dependent in fact pursuant to Indiana Code section 22–3–3–20. Concluding that Awilda is neither a presumptive dependent nor a dependent in fact, we affirm the decision of the Board.

## FACTS

Awilda and Antonio married on June 27, 1987. Antonio became unemployed in December 2001 and remained unemployed until November 18, 2003, when he began working for Wal–Mart Associates, Inc. (Wal–Mart), in Hammond. On January 17, 2004, Antonio was inflating a tire in the automotive department when it exploded, striking him in the head. Antonio died on January 24, 2004, as a result of the work-related injury.[2] His average weekly wage was $299.59 at the time of the accident.

Although Awilda and Antonio were legally married at the time of Antonio's death, they maintained and lived in separate residences located approximately eight blocks apart in East Chicago. Awilda and Antonio had lived separately for at least two years. While there were no pending dissolution or legal separation proceedings, Awilda "felt it best to maintain separate residences while Antonio struggled with a drinking and gambling problem." Appellant's Br. p. 4.

On June 30, 2004, Awilda filed an application for adjustment of claim with the Board. A hearing was held before a single member of the Board on March 9, 2006, and an order was issued on November 25, 2006, ruling as follows:

---

1. Ind.Code §§ 22–3–3–18 to –20.

2. The parties stipulated that Antonio's injury and resulting death occurred in the course of his employment with Wal–Mart. Appellee's App. p. 1.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

\* \* \*

1. That, pursuant to I.C. 22–3–3–19, a presumptive dependent is defined as follows:

"A wife upon a husband with whom she is living at the time of his death, or upon whom the laws of the state impose the obligation of her support at such time."

2. That [Awilda] is not a presumptive dependent of [Antonio] because [they] were separated based upon the following findings:

a. That pursuant to the parties' Stipulation, [Awilda and Antonio] were separated at the time of [Antonio's] death.

b. That the parties had been separated for approximately two (2) years prior to [Antonio's] death.

c. That [Awilda] found it more convenient to live apart from [Antonio] when he drank excessively, gambled and acted irresponsibly.

d. That [Awilda] applied for governmental township assistance every month for the three and one-half (3½) years prior to [Antonio's] death and represented under oath that (1) no one else lived with her; and (2) that she was separated and not married.

e. That [Antonio] himself, under oath, represented to the township assistance office that he lived at a different address than [Awilda].

f. That [Antonio] received his medical bills at his own apartment and not at [Awilda's] residence.

g. That [Awilda] obtained governmental assistance using her maiden name and not her married name during the entire time the parties were separated when applying for governmental assistance.

h. That [Antonio] did not use [Awilda's] name as his "emergency contact," but used his sister, Lucy Laguna, as such contact.

i. That [Antonio] also applied for governmental township assistance and represented to this governmental entity that he was separated and no other person lived with him.

j. The separation of households was by mutual agreement for mutual convenience, which convenience included the possibility of increasing the probability of both of them getting more governmental assistance funds. Each of them represented to the government that each was not dependent upon the other and not mutually financially supportive except for casual amounts from time to time.

k. The parties found it more convenient to live separately but socialized as friends with each other and were not hostile to/with each other.

l. That, pursuant to the decision of *Ballard v. Book Heating & Cooling,* [696 N.E.2d 55 (Ind.Ct.App.1998),] an employee is estopped to assert that he is entitled to obtain worker's compensation benefits when he has asserted an inconsistent claim for governmental benefits, and it would appear that this estopped principle should also apply in this case.

m. That, unlike the decision of *Thatcher v. Thatcher,* [496 N.E.2d 411 (Ind.Ct.App.1986),] there is no order for spousal maintenance to otherwise establish presumptive dependency in this case.

3. That [Awilda] is not a dependent in fact based upon the following findings:

a. That for the three and one-half (3½) years prior to [Antonio's] death, [Awilda] received governmental benefits, and she represented under oath to the gov-

ernmental trustee that she received no income from [Antonio]. In fact, [Awilda] had signed a document under oath just one (1) month prior to [Antonio's] accident that [Antonio] was not supporting her.

b. That [Antonio] was not in a position to support his separated wife because he had been unemployed since December of 2001, until he found a job at Wal–Mart in November of 2003.

c. That [Awilda] relies upon a December 9, 2003, document signed by [Antonio] indicating that he was contributing One Hundred Thirty and 67/100 ($130.67) per month to [Awilda]; however, based upon [Awilda's] own signed, sworn application for governmental assistance, dated December 10, 2003, [Awilda] represented that she received no income from anyone, including [Antonio], except for food stamps.

d. That [Awilda] admitted at [the] hearing that for three and one-half (3½) years prior to [Antonio's] death, [Antonio] had not assisted her with rent, utilities or clothing.

e. That the Board finds that [Awilda] was not a dependent in fact on [Antonio]. Further, [Awilda] should be estopped from asserting she was partially dependent when she signed an application under oath for governmental assistance indicating that she was not dependent upon [Antonio].

### ORDER

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Workers' Compensation Board that [Awilda] shall take nothing against [Wal–Mart] by way of her Application for Adjustment of Claim filed June 30, 2004.

Appellant's App. p. 27–30.

Awilda filed an application for review by the full Board on December 8, 2006. A hearing was held on March 5, 2007, and the Board issued an order on July 26, 2007, affirming the decision of the single member by a vote of four to three. Awilda now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Upon review of a decision of the full Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions. *Inland Steel Co. v. Pavlinac,* 865 N.E.2d 690, 697 (Ind.Ct.App.2007). We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a contrary result. *Id.* In other words, upon review of the Board's findings of fact, we must disregard all evidence unfavorable to the decision and may consider only the evidence and reasonable inferences drawn therefrom that support the Board's findings. *Id.* While we do not owe this same measure of deference to the Board's legal conclusions, we will disturb the Board's conclusions only if it incorrectly interpreted the WCA. *Id.*

### II. Applicable Law

Indiana Code section 22–3–3–18 provides that there are three classes of dependents that can receive death benefits pursuant to the WCA: (1) presumptive dependents, (2) total dependents in fact, and (3) partial dependents in fact. Certain persons are presumed to be wholly dependent for support upon a deceased employee, including a "wife upon a husband with whom she is living at the time of his death, or upon whom the laws of the state impose the obligation of her support at such time." I.C. § 22–3–3–19(a)(1). Presumptive dependents are entitled to compensation "to the complete exclusion of total dependents

in fact and partial dependents in fact...." [3] I.C. § 22–3–3–18.

Total or partial dependents in fact "shall include only those persons related to the deceased employee by blood or by marriage ... [a]ny such person who is actually totally or partially dependent upon the deceased employee is entitled to compensation as such dependent in fact." I.C. § 22–3–3–20. The question of total dependency in fact shall be determined as of the time of death, I.C. § 22–3–3–18(c), and the question of partial dependency in fact shall be determined as of the time of the accident, I.C. § 22–3–3–18(d).

### III. Presumptive Dependency

■ Awilda first argues that the Board erred by concluding that she is not a presumptive dependent pursuant to Indiana Code section 22–3–3–19. While Awilda acknowledges that she and Antonio maintained separate residences and that the applicable statute requires a wife to be living with her husband at the time of his death to become a presumptive dependent, she emphasizes that she and Antonio were "working through their differences at the time of his death and that there were discussions that Antonio give up his apartment and return to Awilda's household." Appellant's Br. p. 11. Therefore, Awilda urges us to find that she and Antonio were in the process of reconciling and, thus, constructively living together at the time of his death.

There is no modern caselaw [4] on point with the unique facts of this case. However, as the Board noted, Awilda and Antonio's actions before Antonio's death provide useful insight into the parties' arrangement. During the two years prior to Antonio's death, Awilda applied for financial assistance from the local government numerous times. Awilda attested under the penalties for perjury in her application dated December 10, 2003—approximately six weeks before Antonio's death—that she was the only person living at her residence and that she had "no sources of help" other than $141.00 of food stamps that she had received from an undisclosed source. Ex. p. 18, 22. The Board relied on this evidence, as well as additional evidence that Awilda had represented herself as "separated" in previous applications,[5] *id.* at 27, 37, to find that Awilda and Antonio were separated and not living together at the time of his death. Therefore, the Board concluded that Awilda is not a presumptive dependent pursuant to Indiana Code section 22–3–3–19.

Awilda directs us her testimony that although she and Antonio maintained separate residences, they saw each other almost every day, he frequently spent the night at her residence, and they participated in family activities together. Tr. p. 15–17. Awilda argues that this evidence proves that she and Antonio were constructively living together at the time of

---

3. Awilda is the only individual claiming benefits pursuant to the WCA as a result of Antonio's death.

4. Previous cases interpreting the requirement that a wife be living with her husband at the time of his death to be a presumptive dependent stem from the era of fault-based divorce and, thus, are inapplicable to the case at bar. *See, e.g., Red Cab v. Ziegner,* 108 Ind.App. 607, 29 N.E.2d 330, 333 (1940) (holding that a widow was entitled to compensation as a pre-

sumptive dependent although she was not living with her husband at the time of his death because he had never accused her of "any conduct which would justify separation, and [she] did not at any time engage in any conduct which would have justified a separation").

5. Awilda's application dated December 10, 2003, did not contain a question regarding her marital status.

his death and that the Board erred by concluding otherwise. However, Awilda's argument is a request for us to reweigh the evidence—an invitation we must deny pursuant to the above-stated standard of review. In other words, we are bound by the Board's factual determinations and will not disturb them unless undisputed evidence inescapably leads to a contrary conclusion. Because no such evidence exists, we will not disturb the Board's finding that Awilda and Antonio were separated and not living together at the time of his death. Thus, Awilda is not a presumptive dependent entitled to compensation pursuant to Indiana Code section 22–3–3–19.

■ To the extent that Awilda's argument can be interpreted as an attack on the Board's interpretation of the statutory language "[a] wife upon a husband *with whom she is living* at the time of his death," I.C. § 22–3–3–19 (emphasis added), we emphasize that we "pay due deference to the interpretation of a statute by the administrative agency charged with its enforcement in light of its expertise in its given area," *Ballard v. Book Heating & Cooling, Inc.*, 696 N.E.2d 55, 56 (Ind.Ct. App.1998). Thus, we defer to the Board's determination that Awilda and Antonio's arrangement did not satisfy the statutory

requirements for compensation as a presumptive dependent.[6]

*IV.   Dependency in Fact*

■ Alternatively, Awilda argues that she is a dependent in fact pursuant to Indiana Code section 22–3–3–20. As support for her argument, Awilda directs us to a third person payment verification form that Antonio completed on December 10, 2003—six weeks before his death—verifying under the penalties for perjury that he has "regularly paid Awilda Gonzalez $130.67 each month."[7] Appellant's App. p. 127. Awilda argues that because she was financially dependent on this money at the time of Antonio's death, she is a dependent in fact entitled to compensation pursuant to the WCA.

While Awilda implores us to reverse the Board's decision and rely on Antonio's form attesting that he was providing her financial assistance each month, we emphasize that the record contains contradictory evidence. As previously detailed, Awilda completed a separate application for government assistance the same day Antonio completed his form. However, Awilda attested on her application that she had *no* independent sources of financial assistance. Ex. p. 18, 22. Because the record does not contain undisputed evidence that

---

**6.** Interestingly, in the portion of Awilda's brief arguing that she is, alternatively, a dependent in fact, she cites Indiana Code section 35–46–1–6 as evidence that she is a presumptive dependent because that statute provides that it is a class D felony for a person to "knowingly or intentionally fail[ ] to provide support to his spouse when the spouse needs support." Put another way, Awilda argues that because it is a crime for a spouse not to support his spouse, Awilda is a presumptive dependent pursuant to the latter portion of Indiana Code section 22–3–3–19 because "the laws of the state impose the obligation of her support." However, Awilda consistently maintained to the Board that she was a presumptive dependent pur-

suant to the first part of the statute—specifically, that she and Antonio were constructively living together. Therefore, she cannot now argue that the laws of the state imposed an obligation for her support, and she has waived appellate review of this argument. *Mid–States Gen. & Mech. Contracting Corp. v. Town of Goodland*, 811 N.E.2d 425, 436 n. 2 (Ind.Ct.App.2004).

**7.** While the form asks the affiant to detail when the payments began, Antonio declined to complete that portion of the form. Additionally, we note that Antonio verified on the form that he and Awilda maintained separate residences. Appellant's App. p. 127.

Antonio was financially supporting Awilda before his death, we decline Awilda's invitation for us to reweigh the evidence and, instead, we defer to the Board's finding that she is not a dependent in fact. Consequently, Awilda is not entitled to compensation pursuant to Indiana Code section 22–3–3–20.

The decision of the Board is affirmed.

DARDEN, J., and BRADFORD, J., concur.

**J.S., Appellant–Respondent,**