## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 27 2015, 5:44 am
CLERK
of the supreme court,
court of appeals and
tax court

**ATTORNEY FOR APPELLANT**

David M. Lutz
David M. Lutz LLC
Fort Wayne, Indiana

**ATTORNEY FOR APPELLEE**
**PERRY GLANCY**

J. Spencer Feighner
Haller & Colvin, P.C.
Fort Wayne, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Leo Kahn, | July 27, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 93A02-1410-EX-755 |
| v. | Appeal from the Worker's Compensation Board of Indiana |
| Fletcher Horn d/b/a Hartwood Architectural Antiques and Perry Glancy, | The Honorable Linda Peterson Hamilton, Chairman, and Members of the Indiana Worker's Compensation Board |
| *Appellees-Defendants.* | Cause No. C-191740 |

**Kirsch, Judge.**

[1] Leo Kahn appeals the decision of the full Worker's Compensation Board ("the Board"), affirming the decision of the Single Hearing Member, that Perry Glancy ("Glancy") was not liable under Indiana's Worker's Compensation Act ("the Act") for Kahn's injuries. Kahn raises several issues, which we

consolidate and restate as: whether the Board erred when it determined that Glancy was not liable under Indiana Code section 22-3-2-14 for injuries Kahn sustained while dismantling an unused barn on Glancy's property because Glancy contracted to sell the barn, which was part of his "residential property," and did not contract for the "performance of work" within the meaning of the Act.

We affirm.

## Facts and Procedural History

At all relevant times, Glancy resided in a home in Decatur, Indiana. The residence sat on approximately two acres. A dilapidated and unused barn, erected by a previous owner, also sat on Glancy's property, approximately one hundred feet from Glancy's house. Glancy never used the barn for any purpose, agricultural, commercial, social, or otherwise. Glancy listed the barn for sale on the internet. An individual named Fletcher Horn, d/b/a Heartwood[1] Architectural Antiques ("Horn") responded to the advertisement. Horn was in the business of purchasing and reselling hand-hewn beams, vintage lumber, architectural elements, flooring and chimney pots. Horn and Glancy entered into a contract in which Horn agreed to purchase the barn for $2,000. According to Glancy, Horn was to remove the barn in a week and to do so in a

---

[1] We note that in the caption on each party's cover page, the name is spelled as "Hartwood." *See also Appellant's Br.* at 1, 3. However, the record of proceedings below indicates that the company name is spelled "Heartwood." *See e.g., Appellant's App.* at 5, 11, 16, 21, 31, 44, 62; *see also Ex. Vol.* I of III ("Stipulation of Facts, Issues, Exhibits"). Therefore, in this decision, we will refer to that party as Heartwood.

manner "not to tear up" or "track up" the yard with rented equipment and the beams and metal from the barn. *Tr.* at 22. Horn paid Glancy $2,000 by check dated August 23, 2006. *Appellant's App.* at 41, 44 (copy of check and affidavit of Glancy).[2]

[4] Horn intended to tear down the barn with manual labor, but he did not have a crew, and he asked Glancy "if [he] knew anybody in the area that could do structure and demolition work." *Tr.* at 23. Glancy asked Kahn if he would be interested in tearing down the barn for the purchaser, Horn.[3] Because Kahn indicated interest in doing so, Glancy "gave [Horn] some names" and phone numbers, including Kahn's, and Horn hired Kahn and other individuals to assist him in tearing down the barn. *Id.* at 23-24. Horn instructed Kahn as to the manner in which the barn was to be removed, and he provided Kahn with the tools to perform the removal, such as chainsaws, hammers, and crowbars. Horn paid Kahn $75 per day, in cash, to assist with the removal of the barn.

[5] On August 8, 2006, the third day of the project, Kahn was standing on a wall when the wall collapsed, causing Kahn to fall to the ground and land on a cement pillar, which was sticking about eight inches out of the ground.[4] Kahn

---

[2] We note that the Findings and Conclusions and Award of the Single Hearing Member and those of the full Board erroneously indicate that the date of the check was August 3, 2006, rather than August 23. *Appellant's App.* at 12, 31.

[3] Glancy and Kahn knew each other from their mutual place of employment, where Glancy was Kahn's supervisor.

[4] Kahn was not provided and was not wearing any safety harness or safety equipment.

suffered injuries to his lower and mid back, sustaining a fracture of his coccyx and a compression fracture at T12 and a disc bulging at L4-L5. Kahn required substantial medical care, including two surgeries. In December 2011, Mark Reecer, M.D., examined Kahn and reported that he sustained a 22% whole person impairment as a result of the fall.

[6] In April 2008, Kahn filed with the Board an application for adjustment of claim, naming Horn as the defendant and claiming that the injuries arose out of and occurred in the course of his employment with Horn. Horn was not insured for worker's compensation liability under the Act. In July 2008, Kahn filed an amended application that named Glancy as another defendant, claiming that Glancy, who did not obtain a Certificate of Worker's Compensation Insurance from Horn, was liable under Indiana Code section 22-3-2-14(b), which provides, in part, that a "person, contracting for the performance of any work exceeding one thousand dollars ($1,000) in value by a contractor . . . without exacting from such contractor a certificate from the worker's compensation board . . . shall be liable to the same extent as the contractor[.]" Kahn obtained a default judgment against both Glancy and Horn in November 2001; however, the default judgment as to Glancy was set aside in December 2011.[5]

---

[5] According to Kahn, "it is not entirely clear" whether the default judgment was set aside as to Horn because the Board's order broadly stated that the prior default judgment order "should be and is set aside." *Appellant's App.* at 24, 27, 34. However, the full Board subsequently clarified that the default judgment previously entered against Horn remains in full force and effect.

In November 2013, a Single Hearing Member of the Board conducted a hearing and received evidence from Kahn and Glancy. Horn did not appear. In December 2013, the Single Hearing Member issued Findings, Conclusions, and Award, determining that Glancy was not liable to Kahn under the Act. In reaching that decision the Board found that, for purposes of liability under Indiana Code section 22-3-2-14, the word "person" does not include an owner who contracts for performance of work on the owner's owner-occupied residential property and that "residential property" includes:

> the occupied areas of the home, as well as the land, improvements and other structures appurtenant to the occupied areas of residence. The language of the statute would include features such as crawl spaces, attics, basements, cellars, improvements such as patios, porches, swimming pools and driveways, the landscaping itself surrounding a dwelling and outbuildings such a garages, sheds *or barns.*

*Appellant's App.* at 32-33 (emphasis added). The Board thus concluded that Glancy was a residential homeowner and excluded from liability.

Kahn timely filed an application for review by the full Board, asserting that the single hearing officer's decision that Glancy was exempt from liability was in error. He also challenged the hearing officer's determination that "residential property" includes a barn. The full Board conducted a hearing in August 2014,[6] and it issued an order on September 24, 2014, finding in favor of Glancy. It found that Glancy did not contract with Horn for the "performance of work" as

---

[6] A transcript of the August 25, 2014, hearing is not included in the record before us.

contemplated by the statute, but, rather, contracted for the sale of the barn. It also reaffirmed the prior finding of the Single Hearing Member that Glancy was not a "person" required under the statute to obtain a certificate of insurance from Horn because the words "residential property" include not only occupied areas of the home, but also improvements and other structures, such as barns. The Board thus concluded that Glancy was a residential property homeowner who was excluded from liability under the Act. Kahn now appeals.

## Discussion and Decision

Upon review of a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions. *Inland Steel Co. v. Pavlinac*, 865 N.E.2d 690, 697 (Ind. Ct. App. 2007). We will not disturb the Board's factual determinations unless the evidence is undisputed and leads inescapably to a result contrary to the Board's. *Id.* In other words, upon review of the Board's findings of fact, we must disregard all evidence unfavorable to the decision and may consider only the evidence and reasonable inferences drawn therefrom which support the Board's findings. *Id.* While we do not owe this same measure of deference to the Board's legal conclusions, we will disturb the Board's conclusions only if the Board incorrectly interpreted the Act. *Id.*

Kahn contends that Glancy is secondarily liable for Kahn's injuries pursuant to Indiana Code section 22-3-2-14. Subsection (b) of the statute provides, in part,

> [A] person, contracting for the performance of any work exceeding one thousand dollars ($1,000) in value by a contractor subject to the

compensation provisions of IC 22-3-2 through IC 22-3-6, without exacting from such contractor a certificate from the worker's compensation board showing that such contractor has complied with section 5 of this chapter . . . shall be liable to the same extent as the contractor for compensation, physician's fees, hospital fees, nurse's charges, and burial expenses on account of the injury or death of any employee of such contractor, due to an accident arising out of and in the course of the performance of the work covered by such contract.

Ind. Code § 22-3-2-14(b). Thus, when a "person" hires a contractor to perform work exceeding $1,000 in value, that person must verify that that contractor carries worker's compensation insurance for an injury to the contractor's employee, otherwise the person who hired the contractor is liable to the same extent at the contractor. Subsection (a), however, states that a "person" within the meaning of subsection (b) does *not* include "an owner who contracts for performance of work on the owner's owner occupied residential property." Ind. Code § 22-3-2-14(a) (emphasis added).

[12] Kahn claims that the full Board's determination is in error in two respects. First, Kahn asserts, the Board erred when it determined that the contract between Glancy and Horn was solely for the sale of the barn, and not for the performance of work because the contract at least implicitly required Horn to disassemble and remove the barn structure. That is, he claims, the dismantling and removal aspect constituted the "performance of work," which triggered secondary liability on Glancy. Second, Kahn claims that the Board erred when it determined that the barn was within the scope of the statute's term "owner occupied residential property" because the barn was not a dwelling or residence, and instead was an agricultural structure that should not be

considered within the meaning of "residential property."  We will address each in turn.

### *Performance of Work*

[13]     Glancy had an entirely unused barn, erected by a prior owner, on his residential property.  It was dilapidated, needing foundation work, and missing part of the floor.  Glancy posted an advertisement to sell it, and Horn responded.  He agreed to pay $2,000 for the barn.  It was Horn's responsibility to remove it.  Glancy testified that he did not have any role in the selection of any contractors or individuals to remove the barn.  Glancy gave names and phone numbers of individuals to Horn, and Horn hired four or five individuals, including Kahn, to remove the barn.  Horn directed the manner in which the demolition of the barn was to occur.[7]  Horn agreed to pay, and did pay, each worker $75 per day.  Kahn suggests that, based on the number of individuals that were working to tear down the barn, on the number of days that they worked, and the amount of work was left to do at the time of the accident, the tearing apart of the barn would have added up to over $1,000 in value, which imposed the statutory requirement on Glancy to verify that Horn possessed worker's compensation insurance or face liability to the same extent as Horn.  However, this analysis,

---

[7] Kahn claims that, on the first day, he received direction from both Glancy and Horn as to how the dismantle the building, but thereafter he received direction only from Horn.  *See Appellant's Br*. at 4.  However, Glancy testified that he did not give instruction or direction to Horn or anyone about the manner in which the barn should come down, and the Board found, "Heartwood instructed [Kahn] as to how the work was to be performed."  *Appellant's App*. at 13.  We must disregard all evidence unfavorable to the Board's finding of fact and may consider only the evidence and reasonable inferences that support the Board's findings.  *Inland Steel Co. v. Pavlinac*, 865 N.E.2d 690, 697 (Ind. Ct. App. 2007).

as to whether the value of the work to remove the barn did, or would have totaled $1,000, is misguided. The inquiry is not how much in labor expense the removal cost Horn; the inquiry is whether Glancy contracted with Horn for the performance of work. Based on the record before us, Glancy offered a barn for sale, and Horn agreed to pay $2,000 for it. In what manner Horn removed the barn, including who did it, was not Glancy's decision. Kahn has not established that the Board erred when it determined that Glancy did not contract with Horn "for the performance of work" on his property as contemplated by Indiana Code section 22-3-2-14(b). *See Inman v. Skelton*, 90 Ind. App. 41, 43, 168 N.E. 131 (1929) (affirming Board's determination that, where fraternity sold building to be torn down in order to clear land to build new house and worker that was hired by buyer was injured in the demolition process, transaction between fraternity and buyer was one of sale and not one of employment, and thus fraternity had no liability under Act for injuries sustained by worker).

### Meaning of Residential Property

[14] Kahn also asserts that the Board was in error when it considered the barn to be "residential property," as that term is used in subsection (a), which excludes from liability "an owner who contracts for the performance of work on his owner occupied residential property." Ind. Code § 22-3-2-14(a). Specifically, the Board interpreted the words "residential property" to include, in addition to occupied areas of the home, the following:

the land, improvements and other structures appurtenant to the occupied areas of residence. The language of the statute would include features such as crawl spaces, attics, basements, cellars, improvements such as patios, porches, swimming pools and driveways, the landscaping itself surrounding a dwelling and outbuildings such a garages, sheds *or barns*.

*Appellant's App*. at 32-33 (emphasis added). Kahn argues that the Board's interpretation was "too broad and is contrary to law." *Appellant's Br*. at 15.

[15] Our Supreme Court has directed, that when we review the Board's legal interpretations,

> [W]e employ a deferential standard of review to the interpretation of a statute by an administrative agency charged with its enforcement in light of its expertise in the given area. We will reverse the Board only if it incorrectly interpreted the Act.

[16] *Christopher R. Brown, D.D.S., Inc. v. Decatur Cnty. Mem'l Hosp.,* 892 N.E.2d 642, 646 (Ind. 2008). In other words, the Board's interpretation of a statute is entitled to great weight. *Cincinnati Ins. Co. ex rel. Struyf v. Second Injury Fund,* 863 N.E.2d 1242, 1249 (Ind. Ct. App. 2007).

[17] Here, Kahn recognizes that the Act does not define the term "owner occupied residential property," but he contends that the phrase was not intended to include "an agricultural barn." *Appellant's Br*. at 16. Kahn proposes that the term should be limited to a person's residence "and any surrounding structures such as a shed or garage that is used for residential purposes." *Id*. at 19. He argues that the term should not include "a barn meant to be used for farming." *Id*. at 18-19. Although Kahn characterizes the structure as an "agricultural barn," presumably to distinguish it from being "residential," it is undisputed

that Glancy never used it for agricultural purposes. For that matter, he did not use it for any purpose. It simply was a dilapidated building existing on the two-acre property where his house sat, about one hundred feet away.

[18] Indiana Code section 22-3-2-14(a) states that an owner who contracts for the performance of work on his owner occupied *residential property* is exempt from liability. It does not state that one is exempted from liability only if the contract is for work to be performed on the owner's physical dwelling. If the legislature desired to limit the application of the exclusion in subsection (a) to a person's actual home and garage, they could have done so and used more restrictive language than "residential property."

[19] Even if we were to find that Kahn's proposition – that the legislature may have meant "residential property" to mean only one's dwelling and garage – was a reasonable interpretation, we have held that "when faced with two reasonable interpretations of a statute, one of which is supplied by an administrative agency charged with enforcing the statute, courts should defer to the agency." *Cincinnati Ins. Co. ex rel. Struyf,* 863 N.E.2d at 1249. We find that the Board's interpretation of the term was reasonable and is entitled to great weight and deference. Accordingly, Kahn has not established that the Board incorrectly interpreted Indiana Code section 22-3-2-14(a) when it determined that the unused barn was part of Glancy's residential property.

[20] Having found no error with the Board's determinations that the transaction was one of sale and not performance of work and that the barn was part of Glancy's

residential property, we hold that the Board did not err in deciding that Glancy was not liable under Indiana Code section 22-3-2-14 for injuries sustained by Kahn while dismantling the barn.

[21] Affirmed.

Vaidik, C.J., and Bradford, J., concur.